OLD COLONY TRUST COMPANY, trustee and executor, *vs.*
COMMISSIONER OF CORPORATIONS AND TAXATION.

Norfolk.   December 8, 1953. — April 8, 1954.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & COUNIHAN, JJ.

*Taxation*, Succession tax.  *Charity.*  *Corporation*, Charitable corporation.
  *Unincorporated Association.*

The character of an organization at the death of a testator who bequeaths
  it a legacy and the tax statute then in effect determine whether the
  legacy is exempt from the succession tax although the will postpones
  payment of the legacy until the termination of a life interest.  [332]
In applying the exception in G. L. (Ter. Ed.) c. 65, § 1, "to or for the
  use of charitable, educational or religious societies or institutions, the
  property of which is by the laws of the commonwealth exempt from
  taxation," the test is whether the society or institution is one whose
  property is generally exempt from taxation under c. 59, § 5.  [333]
Under G. L. (Ter. Ed.) c. 59, § 5, Third, a literary, benevolent, charitable
  or scientific institution must be incorporated in Massachusetts in order
  to qualify for an exemption of its property from local taxation.  [334]
A legacy to a lodge of Masons in Massachusetts for the purchase of bibles
  for recipients of a certain Masonic degree and for the charitable, edu-
  cational and benevolent purposes of the lodge was not exempt from
  the succession tax under G. L. (Ter. Ed.) c. 65, § 1, on the ground that
  the legacy was to an institution "the property of which is by the laws
  of the commonwealth exempt from taxation" where it appeared that
  the lodge was a voluntary association.  [335]
A legacy to a Massachusetts Masonic corporation for "the care and
  assistance of needy and indigent Masons, or their dependents, in their
  own homes or outside of the Masonic Home or Hospital" was exempt
  from the succession tax under G. L. (Ter. Ed.) c. 65, § 1, as a gift to a
  charitable institution "the property of which is by the laws of the
  commonwealth exempt from taxation."  [339]
A judge of probate was not plainly wrong on reported evidence in finding
  that a Masonic trust incorporated in Massachusetts to receive and
  manage gifts for certain Masonic purposes and directly responsible to
  and under the control of a grand lodge of Masons incorporated in
  Massachusetts, and also the grand lodge, were charitable institutions
  both in purpose and in the work done by them, and a bequest to the
  incorporated trust for its "charitable, benevolent, or educational
  uses and purposes" was exempt from the succession tax under G. L.
  (Ter. Ed.) c. 65, § 1, as a gift to a charitable institution "the prop-

erty of which is by the laws of the commonwealth exempt from taxation," although persons other than citizens of Massachusetts were served and incidental amounts were spent on social functions and the teaching of Masonic rites and rituals. [339–340]

A conclusion that legacies to Masonic trustees, incorporated in Massachusetts, although controlled as to such legacies by an unincorporated Masonic council having jurisdiction over many Scottish Rite bodies, including those located here, were given to or for the use of a charitable institution "the property of which is by the laws of the commonwealth exempt from taxation" and were exempt from the succession tax under G. L. (Ter. Ed.) c. 65, § 1, was proper where it appeared that all the work of the council and of the incorporated trustees consisted of putting into effect the principles of Freemasonry through supervision of Scottish Rite bodies and of "contributing and assisting education generally and charities," such as medical research, aid in higher education, and aid to the needy. [343]

Legacies to an unincorporated Masonic lodge located in Massachusetts for its charitable purposes were not proved to be "upon trust for any charitable purposes to be carried out within the commonwealth" within G. L. (Ter. Ed.) c. 65, § 1, and were not exempt from the succession tax where it could not be said on the record that no substantial part of the charitable purposes of the lodge was carried on outside Massachusetts. [344–345]

PETITION, filed in the Probate Court for the county of Norfolk on October 27, 1950.

The case was heard by *Reynolds*, J.

*Harris A. Reynolds*, Assistant Attorney General, for the commissioner of corporations and taxation.

*Elliott V. Grabill*, (*George W. Howe & Claude L. Allen* with him,) for the petitioner.

WILKINS, J. The trustee and executor under the will of Leon M. Abbott, late of Brookline, brings this petition for a determination of the validity of inheritance taxes certified by the respondent as due on account of legacies to three Masonic organizations. G. L. (Ter. Ed.) c. 65, § 30. From a decree determining that no taxes are due, the respondent appealed. The judge made a report of the material facts found by him.

The testator died on October 10, 1932. Under his will his widow, Florence T. Abbott, was made a life beneficiary of a trust fund which terminated at her death on October 2, 1949, when the Masonic legacies became payable.

The material paragraphs of the will follow:

"Fourth: To the Trustees of the Supreme Council of the Ancient Accepted Scottish Rite of Freemasonry for the Northern Masonic Jurisdiction of the United States of America, a charitable corporation duly incorporated under the laws of Massachusetts, the sum of Fifty Thousand Dollars ($50,000), to be known as 'The Supreme Council Education and Charity Fund,' the income thereon, together with any additions to said fund from any source, to be allowed to accumulate and be added to the principal of said fund until it shall amount to One Hundred Thousand Dollars ($100,-000), from and after which time the net income only shall be devoted to such charitable, educational or benevolent uses or purposes as the said Supreme Council shall appoint or decide. It is my desire that some part of the income of said fund shall be used for college or university scholarships for superior attainment or proficiency in the study of clean journalism, or for prizes or awards to college students for the best essays calculated to encourage and inspire the highest type and standard of true American citizenship. It is my earnest hope that the principal of this fund may be added to from time to time by gifts or legacies from other members or friends of the Supreme Council or the Scottish Rite."

"Seventeenth: To Columbian Lodge, A. F. & A. M., of Boston, Massachusetts, the sum of Five Thousand Dollars ($5,000), to be known as 'The Leon M. Abbott Fund,' and the net income therefrom only to be used as follows: Out of the net income there shall be purchased and given to each candidate of the Lodge, when he receives the Master Mason's Degree, a volume of the Holy Bible, King James version. The remainder of said net income shall be used for the charitable, educational and benevolent purposes of said Lodge."

"Twenty-fourth: To the Masonic Education and Charity Trust, of Boston, Massachusetts, a charitable corporation, the sum of Five Thousand Dollars ($5,000), the net income only of which shall be used towards the care and assistance

of needy and indigent Masons, or their dependents, in their own homes or outside of the Masonic Home or Hospital.

"All of the rest and residue of my estate, or of said trust fund for the benefit of my said wife, if she survives me, shall be divided equally, share and share alike, between the Trustees of the Supreme Council of the Ancient Accepted Scottish Rite of Freemasonry for the Northern Jurisdiction of the United States of America, a charitable corporation, Columbian Lodge, A. F. & A. M., of Boston, Massachusetts, and the Masonic Education and Charity Trust, a charitable corporation, of Boston, Massachusetts, for the charitable, benevolent, or educational uses and purposes of said organizations."

The tax statute which governs is the one in effect at the testator's death. See *Dexter* v. *Commissioner of Corporations & Taxation,* 316 Mass. 31, 39–40, 42–43; *Putnam* v. *Commissioner of Corporations & Taxation,* 316 Mass. 73, 77–78. And, as the judge ruled, it is the character of the respective institutions on that date which determines whether their property is exempt from taxation. *Parkhurst* v. *Treasurer & Receiver General,* 228 Mass. 196, 201.

General Laws (Ter. Ed.) c. 65, § 1, in effect on October 10, 1932, was: "All property within the jurisdiction of the commonwealth, corporeal or incorporeal, and any interest therein, belonging to inhabitants of the commonwealth, . . . which shall pass by will, . . . except [1] to or for the use of charitable, educational or religious societies or institutions, the property of which is by the laws of the commonwealth exempt from taxation, or [2] for or upon trust for any charitable purposes to be carried out within the commonwealth, . . . shall be subject to a tax . . . ."[1]

We quote from the report of material facts: "The petitioners do not contend that the charitable funds of The Trustees of The Supreme Council or the charitable funds of the Supreme Council are all spent in Massachusetts. The petitioners argue that The Trustees of The Supreme Council and the Supreme Council were charitable, educational or

---

[1] Subsequent amendments with which we are not concerned are St. 1941, c. 605; St. 1949, c. 792; St. 1950, c. 556.

religious societies, or institutions, the property of which was exempt from taxation in the year 1932 and I have sustained their argument. As to the two other legacies and bequests the petitioners argue that both are exempt under either the 1932 or the 1949 statutes. . . . I am determining this petition under the statute as it appeared in 1932. I find and rule that the legacies . . . were not in the strict sense gifts in trust, but were outright gifts for the uses and for the charitable, educational and religious purposes for which the recipients were established and organized to achieve. I find that the legacies . . . were given to or for the use of charitable, educational or religious societies, or institutions, the property of which was by the laws of this Commonwealth exempt from taxation in 1932 . . . ." To the extent that the judge has made findings which are not plainly wrong on the reported evidence, we are not concerned with the burden of proof. Arguments based on the burden of proof are now pertinent only to the extent that we make findings. See *Cohen* v. *Santoianni*, 330 Mass. 187, 190–191.

The findings disclose that the judge regarded all the legacies as exempt from the tax because the recipients came within the first exception contained in c. 65, § 1, as "charitable, educational or religious societies or institutions, the property of which is by the laws of the commonwealth exempt from taxation." In applying this exception, the test is whether the society or institution is one whose property is generally exempt from taxation under G. L. (Ter. Ed.) c. 59, § 5. *First Universalist Society in Salem* v. *Bradford*, 185 Mass. 310. So far as material, § 5, in effect on October 10, 1932, was: "The following property . . . shall be exempt from taxation: . . . Third, Personal property of literary, benevolent, charitable and scientific institutions and of temperance societies incorporated in the commonwealth, the real estate owned and occupied by them . . . except as follows: (a) If any of the income or profits of the business of the institution or corporation is divided among the stockholders or members, or is used or appropriated for other than literary, educational, benevolent, charitable,

scientific or religious purposes, its property shall not be exempt."

The first question is whether under c. 59, § 5, and hence under c. 65, § 1, a society or institution must be a Massachusetts corporation in order to qualify for an exemption. Both briefs assert that the meaning of c. 59, § 5, is "clear," but reach opposite conclusions as to what that "clear" meaning is. We think that the answer must be in the affirmative. The requirement of incorporation, while not standing forth in the sharp delineation of its predecessor statute, R. L. c. 12, § 5, Third,[1] must nevertheless be recognized on commonly accepted principles of statutory construction. "A general revision of statutes does not ordinarily change the effect of earlier provisions, but is to be construed as a continuation of them in the absence of some plain indication of a legislative intent to alter the law. *Mackintosh, petitioner,* 246 Mass. 482, and cases there collected." *Byfield* v. *Newton,* 247 Mass. 46, 56. *Worcester County National Bank* v. *Commissioner of Corporations & Taxation,* 275 Mass. 216, 218. *Medford Trust Co.* v. *McKnight,* 292 Mass. 1, 28.

The petitioner argues that clause (a) of c. 59, § 5, Third, added in the enactment of the General Laws, shows an intent to draw a distinction between an "institution" and a corporation. Otherwise, it is said, the word "institution" would be meaningless. But that word, as well as "corporation," also appeared in R. L. c. 12, § 5, Third. We think that if the Legislature had intended to create a new exemption in favor of voluntary associations it would have said so definitely. The distinction between a charitable corporation subject to G. L. (Ter. Ed.) c. 180 and a volun-

---

[1] "The personal property of literary, benevolent, charitable and scientific institutions and of temperance societies incorporated within this commonwealth, the real estate owned and occupied by them or their officers for the purposes for which they are incorporated . . . . Such real or personal property shall not be exempt if any of the income or profits of the business of such corporation is divided among the stockholders or members, or is used or appropriated for other than literary, educational, benevolent, charitable, scientific or religious purposes, nor shall it be exempt for any year in which such corporation wilfully omits to bring in to the assessors the list and statement required by section forty-one." *Batt* v. *Treasurer & Receiver General,* 209 Mass. 319, 320.

tary association might well have commended itself to the Legislature.

Columbian Lodge is a voluntary association. Its legacy cannot be exempt under the first exception in c. 65, § 1. But the other two legatees are Massachusetts corporations, and we proceed to consider whether their legacies properly have been found to be exempt under that exception.

"[W]hether the institution is in its character literary, benevolent, charitable or scientific within the meaning of those words in the statutes . . . will depend upon the language of its charter or articles of association, constitution and by-laws, and upon the objects which it serves and the method of its administration." *Little* v. *Newburyport*, 210 Mass. 414, 415. The important factors are "its purposes declared and the work done." *Parkhurst* v. *Treasurer & Receiver General*, 228 Mass. 196, 201. *Assessors of Boston* v. *Garland School of Home Making*, 296 Mass. 378, 384. *Assessors of Boston* v. *Boston Pilots' Relief Society*, 311 Mass. 232, 236–237. *Hairenik Association, Inc.* v. *Boston*, 313 Mass. 274, 278–279. *Assessors of Boston* v. *Lamson*, 316 Mass. 166, 172.

1. Masonic Education and Charity Trust, hereinafter called the Charity Trust, was organized under St. 1884, c. 221. It is authorized "to receive, hold, invest, re-invest and manage all gifts, devises and bequests made . . . upon trusts for educational or charitable purposes and relief connected with the families of deceased or living members of said grand lodge and its subordinate organizations, or for the relief of distressed freemasons, their widows or orphans, of this or other states or countries, and also for the promotion of its library and collections relating to art, architecture and antiquities." St. 1884, c. 221, § 1. The judge stated in his report of material facts: "[I]t is practically a corporation within a corporation because it is directly responsible to and is under the control of the Master, Wardens and Members of the Grand Lodge of Masons in Massachusetts," hereinafter called the Grand Lodge.

The Grand Lodge was organized under St. 1859, c. 73. A

particular lodge, such as Columbian Lodge, is brought into being by a charter granted by the Grand Lodge, which also approves the by-laws of a particular lodge. In the Grand Constitutions and Regulations of the Grand Lodge, hereinafter called the Grand Constitutions, it is provided: "Each lodge is a constituent part of the Grand Lodge, which is the representative body of the whole craft and of each particular lodge and individual member. In the Grand Lodge, therefore, resides the fee of all property and effects belonging to the craft as a whole or to any subdivision thereof, so that whenever a charter shall be surrendered, vacated, or declared forfeited, it shall be returned to the Grand Lodge; also the by-laws, records, seal, regalia, funds, and other property of every description of the lodge shall forthwith be transferred and delivered to the Grand Lodge" (§ 305). "The Grand Lodge consists of the worshipful masters, the senior and junior wardens, and the proxies of the lodges of this jurisdiction; of the officers of the Grand Lodge; and of its past grand masters, past deputy grand masters, past district grand masters, and past grand wardens" (§ 202). "Each particular lodge . . . shall be allowed three votes in all elections and other business . . . " (§ 203). "(c) The annual income . . . of the Grand Charity Fund, and of such additions as may be made to it by the Grand Lodge, and by gifts, bequests, or otherwise, all held in trust by the Masonic Education and Charity Trust, shall annually be divided into three equal parts: one part to be added to the Grand Charity Fund; one part to be applied to the support and maintenance of the Masonic Home and Hospital; and one part to be available to the General Charities of the Grand Lodge. (d) Income of funds in the hands of the trustees shall be disposed of as the Grand Lodge shall from time to time direct except in the case of specific funds where the expenditure of income is given to said trustees by the will, deed, or other instrument creating the trust" (§ 600).

The purposes of the Grand Lodge, the Charity Trust, and all particular lodges as stated in the preamble of the Grand Constitutions are: "Freemasonry is a charitable, benevolent,

educational, and religious secret society, adhering to its own peculiar ancient Landmarks. Its methods of recognition and of symbolic instruction are secret and thereby a test of membership is provided, though a Brother be traveling in foreign countries and among those who would otherwise be strangers. It is religious in that it teaches monotheism, the Volume of the Sacred Law is open upon its altars whenever a Lodge is in session, worship of God is ever a part of its ceremonial, and to its neophytes and Brethren alike are constantly addressed lessons of morality; yet it is not theological. It is educational in that it teaches a perfect system of morality, based upon the Sacred Law, by a prescribed ceremonial; and it also provides libraries and opportunities for study therein. It is benevolent in that it teaches relief of the poor and distressed as a duty and exemplifies the duty by relief of sick and distressed Brethren, by caring for the widows and orphans of the Brethren, by maintaining homes for aged and distressed Brethren and their dependents, and by providing for the education of orphans. It is charitable in that none of its income inures to the benefit of any individual, but all is devoted to the improvement and promotion of the happiness of mankind. It is a social organization only so far as it furnishes additional inducement that men may forgather in numbers, thereby providing more material for its primary work of training of worship and of charity."

The charitable disbursements of the Charity Trust were:

|  | Year ending August 31, 1932 | Year ending August 31, 1933 |
|---|---|---|
| Grand Lodge of Masons in Massachusetts . . . . | $48,104.78 | $48,510.08 |
| Direct relief . . . . . | 12,999.49* | 13,665.37* |
| Veterans of World War I . | 3,298.64* | 2,158.50* |
| Permanent improvement at Masonic Home, Charlton . |  | 1,479.00* |
|  | $64,402.91 | $65,812.95 |

The items marked * were spent in Massachusetts for charitable purposes.

The charitable disbursements of the Grand Lodge were:

|  | Year ending August 31, 1932 | Year ending August 31, 1933 |
|---|---|---|
| Maintenance of Masonic Home, Charlton . . . | $109,987.95 | $ 96,896.45 |
| Maintenance of Masonic Hospital, Shrewsbury . . | 52,082.33 | 49,067.93 |
| Direct relief . . . . . | 29,197.41 | 21,298.98 |
| Service Department . . . | 13,422.98 | 12,388.61 |
| Education Department . . | 9,618.98 | 4,386.38 |
| George Washington Memorial Fund . . . . . | 12,500.00* |  |
| George Washington Memorial Association donations | 2,757.23* | 1,741.79* |
| Rainy Day Fund . . . . | 1,150.00* | 600.00* |
| Relief Association of United States and Canada . . | 321.89* | 311.89* |
| Permanent improvements at Masonic Home, Charlton . | 2,749.36 | 1,512.90 |
| Permanent improvements at Masonic Hospital, Shrewsbury . . . . . . . | 2,667.62 |  |
|  | $236,455.75 | $188,204.93 |

All items except those marked * were spent in Massachusetts for charitable purposes. The Rainy Day Fund is "a small pool used for special relief," a small part of which is used in Massachusetts.

"It was decided in *Masonic Education & Charity Trust* v. *Boston*, 201 Mass. 320 . . . that a bequest to the Grand Lodge to be used for the establishment and maintenance of a home for needy Masons was a public charity which the Grand Lodge held as a benevolent or charitable institution. This is in accord with the great weight of authority holding that Masonic organizations are charitable societies or institutions under the taxing laws." *MacGregor* v. *Commissioner of Corporations & Taxation*, 327 Mass. 484, 488, note. In the *Masonic Education & Charity Trust* case, it was said

(page 325): "The object to be accomplished being purely charitable, and the number to be benefited indefinite, even if the gift is limited to a class, these features are sufficient in law to constitute the gift a public charity." This quotation is almost decisive in favor of exemption of the bequest under the Twenty-fourth paragraph, which is to the Charity Trust for the care and assistance of needy Masons or their dependents.

In supplementation of the judge's findings we find additional facts as to the activities of the Grand Lodge. The Masonic Home in Charlton provides accommodations for about one hundred fifty distressed Master Masons or their widows. The Masonic Hospital is for those suffering from incurable diseases and has accommodations for fifty patients. A board of Masonic relief is in charge of the operations of the home and the hospital, and aids particular lodges in furnishing relief to needy brethren and their families. The service department deals not so much with financial relief as with the actual service and care of those in need. The education department maintains Lodges of Instruction to which initiates must go after each degree and to which all Master Masons may go for education along Masonic principles of life.

We think that the judge was not plainly wrong in finding that the Charity Trust, and by implication, the Grand Lodge, were charitable institutions both in purpose and in the work done, and that the residuary bequest to the Charity Trust was exempt from tax. It is not necessary that a charitable corporation organized in this Commonwealth, in order to be exempt from taxation, serve only citizens of this Commonwealth. *Balch* v. *Shaw*, 174 Mass. 144, 149. *Parkhurst* v. *Treasurer & Receiver General*, 228 Mass. 196. *Assessors of Boston* v. *Lamson*, 316 Mass. 166. *Assessors of Boston* v. *World Wide Broadcasting Foundation of Massachusetts, Inc.* 317 Mass. 598. There appears to have been "adherence in the main to the declared purpose of the charity." *Springfield Young Men's Christian Association* v. *Assessors of Springfield*, 284 Mass. 1, 8. It is true

that no evidence of operating expenses was introduced, but it is equally true that the record of the hearing in the court below discloses no issue raised that such expenses were not fair and reasonable or made in good faith. See *Assessors of Boston* v. *Lamson*, 316 Mass. 166, 174. No argument based on burden of proof opens that question for the first time now. The judge made no express finding, but we find that no income of the Charity Trust or of the Grand Lodge inures to any member, other than one in need, except as an administrative expense. It is suggested that some of the funds must have been spent on social functions, and it is objected that the Grand Lodge's educational program is really not charitable but has to do with the teaching of the Masonic rites and rituals. Any funds thus expended we think were merely subsidiary and incidental to the main charitable purposes. *Newton Centre Woman's Club, Inc.* v. *Newton*, 258 Mass. 326, 331. The amounts spent on education by the Grand Lodge were respectively about four per cent and about two per cent of its charitable expenses for the years ending in August, 1932, and August, 1933. Should anything be added for administrative expenses, these percentages would be reduced.

2. The Trustees of the Supreme Council of the Ancient Accepted Scottish Rite of Freemasonry for the Northern Masonic Jurisdiction of the United States of America, hereinafter called the Trustees, was incorporated by St. 1872, c. 252, amended by St. 1875, c. 121; St. 1891, c. 67; St. 1907, c. 156; St. 1922, c. 73; St. 1924, c. 62; and St. 1926, c. 142. The Supreme Council is a voluntary association, which has jurisdiction over all Scottish Rite bodies in fifteen States, including Massachusetts.

The Trustees "may receive, manage and convey such real and personal estate, not exceeding in all five million dollars, as may be deposited with them [it] · by or for the supreme council . . . to such uses as said council may appoint, and shall report their [its] doings to such supreme council, and submit their [its] accounts and records to the inspection of said council. They [it] may also receive and

execute the trust of gifts and devises made to them [it] for religious, charitable, scientific or educational uses, whether said trusts are to be performed and executed in this or any other state of the United States where said rite is practised." St. 1926, c. 142, § 2. "Active members only of the supreme council . . . shall be trustees and members of the corporation . . . and said trustees shall be subject to the duties and liabilities, and shall have the powers and privileges set forth in the general laws which now are, or hereafter may be in force applicable to such corporations." St. 1926, c. 142, § 3.

The judge found: "The Trustees, a corporation, is in effect a holding company for the funds of the Supreme Council." This is true so far as it goes, but the corporation also is empowered to receive other funds which may not be subject to the control of the Supreme Council. The constitution of the Trustees provides: "The permanent fund shall consist of the property now in the hands of the corporation together with all such other property real and personal as shall be added thereto by said voluntary association," that is, the Supreme Council (Article 19). The permanent fund "shall be held by the corporation as a special deposit, the whole or any part of which shall be returned to said voluntary association when, as and if called for by it. Unless and until so recalled by said voluntary association, the said permanent fund shall be administered to such religious, charitable, scientific or educational uses as the Supreme Council shall direct" (Article 20). "Gifts, legacies and devises which may be made to said corporation for specific uses shall not become a part of the permanent fund. They shall be administered for such religious, charitable, scientific or educational purposes as may be designated by the donors. Or, in the absence of such designation, by said voluntary association" (Article 21).

The Supreme Council has a constitution containing a statement of principles in part as follows: "This Supreme Council affirms its unswerving loyalty to the fundamental purpose and principles of Freemasonry. It understands that

purpose to be the improvement and strengthening of the character of the individual man, and through the individual of the community. It believes that this purpose is to be attained by laying a broad basis of principle upon which men of every race, country, sect, and opinion may unite, rather than by setting up a restricted platform upon which only those of certain races, creeds and opinions can assemble. Believing that good and wise men can be trusted to act well and wisely, it considers it the duty of the Fraternity to impress upon its members the principles of personal righteousness and personal responsibility, to enlighten them as to those things which make for human welfare, and to inspire them with that feeling of charity, or well-wishing, toward all mankind which will move them to translate principle and conviction into action. To that end, it teaches and stands for the worship of God, for truth and justice, liberty and enlightenment, fraternity and philanthropy. It believes in principles rather than programs. Principles unite men; programs divide them. Men may agree on principles without agreeing upon their particular application to some specific problem. Nothing can be more important than the preservation of the essential and permanent sympathy and unity of purpose of those who are unable to agree as to the wisest action under special and temporary conditions. It is of the essence of Freemasonry that this unity be preserved."

Scottish Rite bodies chartered by the Supreme Council are called lodges, councils, chapters, and consistories. No salaries are paid except for administrative services, and no income inures to the members. Each body has a "hospitaler," who receives no salary, and to whom the body gives money for assistance to needy members. The revenues of the bodies are principally from membership dues, although many have substantial funds derived from gifts and legacies. "In carrying out and supervising the work of the various bodies within its jurisdiction, and through its own particular work, the Supreme Council puts into living practical effect its declaration of principles."

The Supreme Council has provided higher education in

college and university for worthy young men and women. For the year ending July 31, 1932, the charitable disbursements of the Supreme Council were Education Fund $28,634.26, George Washington Memorial $25,000, total $53,634.26. For the year ending July 31, 1933, the charitable disbursements were $30,095.09, all for the Education Fund.

We have set forth all the findings of the judge relating to the purposes declared of the Trustees and its work done. They alone are not enough to support the decree. We must turn to the evidence. *Cohen* v. *Santoianni*, 330 Mass. 187, 190. There is no descriptive evidence as to the George Washington Memorial. We could notice judicially that its geographical location is Arlington, Virginia, but that would tell us nothing of its nature or purposes. We note that for the years ending July 31, 1949, and July 31, 1950, out of total charitable expenditures respectively of $74,944 and $93,034.35, $5,000 was contributed to the memorial in each year. We infer notwithstanding the relatively large expenditure in the year ending July 31, 1932, that normally only a relatively small part of the charitable expenses was for that purpose. There was testimony, which we accept as facts, that all the work of the Supreme Council and of the Trustees consists of putting into effect the principles quoted above through supervision of Scottish Rite bodies, and in "contributing and assisting education generally and charities." This we take to mean the sort of expenditures shown in the evidence, which are medical research, aid in higher education, and aid to the needy. We, accordingly, uphold the conclusion of the judge as to the legacies to the Trustees.

The respondent contends that the fact that the Supreme Council, being unincorporated, has complete control — except for funds specially limited by the terms of gift, which is not this case — precludes the legacies in paragraph Fourth and in the residuary clause from being "for the use of" the Trustees; and so these legacies are not exempt under the first exception in G. L. (Ter. Ed.) c. 65, § 1. The argument is made that the corporation does not "execute the trust of gifts" made to it within St. 1926, c. 142, § 2, originally

St. 1872, c. 252, § 2, which states the powers of the corporation. But this statute of incorporation, both originally and as amended, expressly provides that the corporation shall receive property deposited with it by or for the Supreme Council "to such uses as said council may appoint." The phrase "also receive and execute the trust of gifts and devises" made to the corporation refers to gifts from other sources than the Supreme Council. The finding that the legacies were outright gifts for the purposes which the recipients were organized to achieve is supported by the evidence, and settles that the legacies are "for the use" of the Trustees.

3. We return to the bequests to Columbian Lodge to consider whether they are exempt under the second exception in G. L. (Ter. Ed.) c. 65, § 1, as being "upon trust for any charitable purposes to be carried out within the commonwealth." The judge found that Columbian Lodge has funds for its general purposes and administration expenses, but the "preponderance" of its funds is "held in trust for the charitable purposes of the Lodge, chiefly involving charitable work in Massachusetts. This, to a great extent, involves relief to needy members, their widows and orphans, and the principal objects of such charity are carried out in Massachusetts. To become a member of the Lodge one must be a resident of the Commonwealth. However, it is possible that charitable relief could be sent to widows and orphans of members who reside out of the Commonwealth. I cannot make a finding as to the small amount so paid." There is no evidence as to how much of the bequest under paragraph Seventeenth would be required for the purchase of Bibles.

The charitable disbursements of Columbian Lodge were, for the year ending August 31, 1932, Grand Lodge $950, direct relief and charity $2,985.56, total $3,935.56; for the year ending August 31, 1933, Grand Lodge $574, direct relief and charity $1,440.45, total $2,014.45. The payments to the Grand Lodge included amounts received from candidates for admission. The "payments were used by the

Grand Lodge for charitable purposes." An analysis of the charitable disbursements of the Grand Lodge shows that $16,729.12 out of $236,455.75 was spent outside the Commonwealth in the year ending August 31, 1932. For the year following the figure was much smaller: $2,653.68 out of $188,204.93. Nevertheless Columbian Lodge has not carried out the burden of showing that it was entitled to the exemption claimed. *Boston Chamber of Commerce* v. *Assessors of Boston*, 315 Mass. 712, 716. *Fisher School* v. *Assessors of Boston*, 325 Mass. 529, 533–534. *Worcester Masonic Charity & Educational Association* v. *Assessors of Worcester*, 326 Mass. 409, 411. It cannot be said on this record that no substantial part of the charitable purposes of Columbian Lodge was carried on outside the Commonwealth. See *MacGregor* v. *Commissioner of Corporations & Taxation*, 327 Mass. 484, 489.

As to the bequests to Columbian Lodge under paragraph Seventeenth and the residuary clause, the findings do not support the decree, and we are unable upon the evidence to make findings that do.

4. The decree is reversed, and a new decree is to be entered declaring that a tax is due the Commonwealth under G. L. (Ter. Ed.) c. 65 because of the property passing to Columbian Lodge, A. F. & A. M., under paragraph Seventeenth and under the residuary clause of the will of Leon M. Abbott, late of Brookline; but that no tax is due because of the property passing to Trustees of the Supreme Council of the Ancient Accepted Scottish Rite of Freemasonry for the Northern Masonic Jurisdiction of the United States of America and to Masonic Education and Charity Trust under paragraphs Fourth and Twenty-fourth and the residuary clause of the said will.

*So ordered.*