OLD COLONY TRUST COMPANY, trustee, & others *vs.*
COMMISSIONER OF CORPORATIONS AND TAXATION & others.

Bristol.   January 3, 1962. — February 12, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, CUTTER, & KIRK, JJ.

*Taxation,* Succession tax. *Statute,* Retroactive statute. *Constitutional
Law,* Equal protection of laws.

Whether a remainder interest in a trust fund given to a foreign charitable
corporation upon the death of the settlor, an inhabitant of Massachu-
setts, in 1933, but not taking effect in possession and enjoyment until
the termination of the trust in 1957 at the death of the survivor of life
beneficiaries, was exempt from the succession tax must be determined by
the succession tax law as it stood in 1933, G. L. (Ter. Ed.) c. 65, § 1,
and not as it stood in 1957, so that the reciprocal exemptions created by
the amendments of § 1 by St. 1941, c. 605, § 1, and St. 1955, c. 596,
were inapplicable.   [619–620, 621]
A foreign charitable corporation was not subject to unconstitutional dis-
crimination by reason of the imposition of a succession tax under G. L.
(Ter. Ed.) c. 65, § 1, on a remainder interest in a trust fund given to it
upon the death of the settlor, an inhabitant of Massachusetts, in 1933,
but not taking effect in possession and enjoyment until 1957 upon termi-
nation of the trust, whereas a gift to a foreign charitable corporation
of a remainder interest in a trust fund taking effect in possession and
enjoyment in 1957, made by an inhabitant of Massachusetts who died
after the reciprocity amendments of § 1 by St. 1941, c. 605, § 1, or
St. 1955, c. 596, would be governed by those amendments, respectively,
and might be exempt from tax.   [621]
The special exemption from taxation granted by St. 1930, c. 86, to "The
American National Red Cross, a corporation incorporated under act of
Congress" does not result in an unconstitutional discrimination against
a local foreign charitable corporation not afforded such exemption.
[621]

PETITION IN EQUITY, filed in the Probate Court for the
county of Bristol on February 4, 1959.

The case was reported by *Mullaney,* J., without decision.

*Richard F. Barrett,* for the petitioners.

*Edward J. McCormack, Jr.,* Attorney General, & *Herbert
E. Tucker, Jr.,* Assistant Attorney General, for the respond-
ents, submitted a brief.

CUTTER, J.   This is a petition in equity under G. L. c. 65,

§ 27 (as amended through St. 1953, c. 654, § 90), for abatement of succession taxes in the amount of $36,229.04, paid in full on April 25, 1958, by Old Colony Trust Company as trustee under a revocable inter vivos trust established in 1926 by Charles H. Fuller. Fuller died on September 6, 1933, while an inhabitant of Massachusetts. The trust provided for certain income life interests and, upon their termination, for remainder gifts, including gifts to two Rhode Island charitable corporations, Family Service Society of Pawtucket and Vicinity (Family Service), and Young Men's Christian Association of Pawtucket (Y. M. C. A.).[1] The trust terminated on February 26, 1957, upon the death of the last survivor of the life beneficiaries. Family Service and Y. M. C. A. thereupon became entitled to their respective remainder interests. On July 23, 1957, the then commissioner of corporations and taxation assessed a succession tax under G. L. c. 65, § 1, of $18,814.52 on the gift to Family Service and of $18,014.52 on the gift to Y. M. C. A. The trustee now seeks to recover these taxes. The facts have been agreed and the probate judge has reported the case without decision.

At the termination of the trust in 1957, G. L. c. 65, § 1 (as amended through St. 1955, c. 596), imposed a succession tax at stated rates upon property held under a revocable trust, such as the Fuller trust, "which shall pass . . . by deed, grant or gift . . . intended to take effect in possession or enjoyment after his [the grantor's] death . . . except" certain gifts to Massachusetts charities, and, on a reciprocal basis, certain charities in other States, as more fully set out in the margin.[2] The exemption provisions of

---

[1] Family Service was formerly known (and was referred to in the trust) as Associated Charities of Pawtucket, Central Falls, and Valley Falls. The gifts were contingent upon the active corporate existence of each such charitable donee at the termination of the trust.

[2] The relevant exceptions, as existing in 1957, read, "(1) to . . . charitable . . . institutions which are organized under the laws of, or charitable . . . institutions, incorporated or unincorporated, whose principal charitable . . . objects are solely carried out within, or whose charitable . . . objects are principally and usually carried out within, or whose charitable . . . activities are principally and usually carried out within the commonwealth; or which are organized under the laws of, or whose principal charitable . . . objects are carried out within any other state or states of the United States which exempt from similar taxation legacies and devises by its citizens to or for the use of

G. L. c. 65, § 1 (see footnote 2), have undergone material changes since Fuller's death in 1933, when G. L. (Ter. Ed.) c. 65, § 1, provided a similar tax upon property passing "by deed, grant or gift . . . to take effect in possession or enjoyment after . . . [the grantor's] death" but a much more limited charitable exemption reading (so far as relevant) merely, "except to or for the use of charitable . . . institutions, the property of which is by the laws of the commonwealth exempt from taxation, or for or upon trust for any charitable purposes to be carried out within the commonwealth. . . ." In 1941, after Fuller's death, the exemption was expanded by St. 1941, c. 605, § 1,[3] to make provision for some reciprocal exemption of gifts to charities outside Massachusetts. The exemption as it read after the 1941 amendment is shown below.[4] By St. 1950, c. 556, the exception for charitable gifts was enlarged in respects not now relevant. Neither St. 1950, c. 556, nor St. 1955, c. 596, contained any provision similar to that found in St. 1941, c. 605, § 2 (see footnote 3, *supra*), expressly making the amendments of c. 65, § 1, contained in those acts applicable with respect to persons dying on or after some specified date.[5]

---

such . . . institutions which are organized under the laws of, or whose principal charitable . . . objects are carried out within the commonwealth; or . . . (3) [then follows a provision essentially like paragraph (2) of the exemption in the 1941 amendment; see footnote 4, *infra*]."

[3] St. 1941, c. 605, § 2, made the 1941 amendment "applicable to property or any interest therein passing or accruing upon the death of persons who have died on or after the first day of July, nineteen hundred and forty."

[4] The 1941 exemption reads, "except (1) to or for the use of charitable . . . institutions which are organized under the laws of, or whose principal objects are carried out within, the commonwealth or which are organized under the laws of, or whose principal objects are carried out within, some other state of the United States which exempts from similar taxation legacies and devises by its citizens to or for the use of such . . . institutions which are organized under the laws of, or whose principal objects are carried out within, the commonwealth, or (2) for or upon trust for any charitable purposes to be carried out within the commonwealth or within any other state of the United States which exempts from similar taxation legacies and devises by its citizens for charitable purposes to be carried out within this commonwealth . . . ."

[5] General Laws (Ter. Ed.) c. 65, § 36, in effect both at the settlor's death in 1933 and at the termination of the trust in 1957, reads, "This chapter shall apply only to property or interests therein passing . . . upon the death of persons dying on or after May fourth, nineteen hundred and twenty, and as to all property and interests therein passing . . . upon the death of persons who have died prior to said date the laws theretofore applicable shall remain in

Rhode Island in 1933 at Fuller's death exempted from the inheritance taxes of that State transfers by Rhode Island decedents to Massachusetts charitable corporations. See R. I. Gen. Laws (1923) c. 39, § 9 (1).[6] By R. I. Pub. Laws (1939), c. 664, § 1, this exemption (then embodied in R. I. Gen. Laws [1938] c. 43, § 8 [1]) was made dependent upon the existence of a reciprocal exemption under the Massachusetts inheritance tax law for gifts by Massachusetts decedents to Rhode Island charitable corporations. As in effect in 1957, at the termination of the Fuller trust, the Rhode Island statutory exemption[7] remained upon a reciprocal basis. We assume that, both at Fuller's death in 1933 and at the termination of the trust in 1957, the Rhode Island exemption was broad enough, in relation to corporations like Family Service and Y. M. C. A., to meet all requirements of reciprocity found in G. L. c. 65, § 1, since its amendment by St. 1941, c. 605. The principal issue is whether the Massachusetts exemption applies to the succession to a future interest in property, occurring by reason of the death of an inhabitant of Massachusetts (a former owner of such property) prior to July 1, 1940 (see St. 1941, c. 605, § 2), but taking effect in possession and enjoyment after that date. This depends upon whether the scope of the exemption is to be determined under G. L. c. 65, § 1, as in force at Fuller's death in 1933, or as in force at the termination of the trust in 1957 (see footnote 2, *supra*).

1. The excise imposed by G. L. c. 65, § 1, is an excise not only upon the privilege of the decedent to transmit prop-

---

force; but so much of this chapter as relates to property or interests therein passing by deed, grant or gift completed inter vivos in contemplation of death shall apply only to such deeds, grants or gifts made on or after May twenty-seventh, nineteen hundred and twenty.''

[6] Section 9 reads in part, ''The following exemptions from the taxes imposed under the provisions of section five of this chapter are hereby allowed: (1) All property . . . transferred to any corporation . . . located in Rhode Island, which is exempt from taxation by charter or under the laws of this state, or to any corporation . . . located outside of this state, which if located within this state would be exempt as aforesaid . . . shall be exempt.''

[7] Rhode Island Gen. Laws (1956), Tit. 44, c. 22, § 11 (1), contained a proviso to what was substantially the preëxisting exemption, reading, ''provided the state of domicile of such corporation . . . allows a reciprocal exemption to any similar Rhode Island corporation . . . .''

erty at and after his death but also upon the privilege of the donees to succeed to that property. In *Attorney Gen.* v. *Stone,* 209 Mass. 186, 190, this court said, "Until the full exercise of such privilege and while as yet no tax has been assessed and paid thereon, we see no reason why, by a general rule applicable to all such cases, any pending liability to taxation may not be regulated so as to subject it to a just and uniform method of assessment, even though some change may thereby be made from the method previously adopted." See *Magee* v. *Commissioner of Corps. & Taxn.* 256 Mass. 512, 515–516; *Saltonstall* v. *Treasurer & Recr. Gen.* 256 Mass. 519, 523–524, affd. sub nom. *Saltonstall* v. *Saltonstall,* 276 U. S. 260. These cases suggest that the Legislature would have had power to exempt from succession tax the remainder gifts to such out-of-state charities at any time between Fuller's death in 1933 and the termination of the trust in 1957, when the remainder interests of Family Service and Y. M. C. A. took effect in possession and enjoyment.

Several decisions have discussed what statute governs succession taxation of future interests which do not take effect in enjoyment immediately at the death of the former owner of the property. In *Old Colony Trust Co.* v. *Commissioner of Corps. & Taxn.* 331 Mass. 329, 332, it was said, "The tax statute which governs is the one in effect at the testator's death." This court then was dealing with an excise under G. L. c. 65 upon remainder interests vesting in possession and enjoyment on October 2, 1949, upon the death of a life beneficiary of a trust created by the will of one Abbott, who died on October 10, 1932. The question was whether certain allegedly charitable remainder gifts were exempt under G. L. (Ter. Ed.) c. 65, § 1. This court treated amendments of § 1, by St. 1941, c. 605; St. 1949, c. 792; and St. 1950, c. 556, as irrelevant. The 1949[8] and 1950 amendments, of course, took place after the succes-

[8] The 1949 amendment was approved on August 29, 1949. It contained no emergency preamble and thus had not become effective on October 2, 1949, when the remainder beneficiaries became entitled to their interests in possession and enjoyment.

sions to the remainder interests were complete. Section 2 of the 1941 statute, quoted in part in footnote 3, *supra,* expressly limited the broadened exemption granted by the 1941 amendment to property of persons dying after July 1, 1940. It thus may be argued that the issue raised in the present case was not really before this court in the former *Old Colony* case (331 Mass. 329, 332) because no statute changed the exemption contained in c. 65, § 1, between the death of Abbott in 1932 and the falling in of the remainder interests in 1949.

In *Dexter* v. *Commissioner of Corps. & Taxn.* 316 Mass. 31, 36–57, this court determined that no succession tax was imposed by c. 65, § 1, with respect to a remainder interest under the will of a testator who died in 1874, where, upon a life beneficiary's death in 1935, the interest was disposed of in default of the exercise of a power of appointment held by the life beneficiary. That case, of course, involved the succession to property of a testator who had died long before May 4, 1920, the date mentioned in G. L. (Ter. Ed.) c. 65, § 36 (footnote 5, *supra*). This court (p. 56) saw in G. L. c. 65, no ''legislative intention to depart from the established policy . . . not to impose . . . succession taxes upon successions . . . *generated by the death of the former owner* of the property *before the passage of the taxing statute*'' (emphasis supplied), despite the circumstance (pp. 40–42) that for some purposes a succession to a future interest remains incomplete until the beneficiary enters into its possession and enjoyment.

The *Dexter* case is not directly a precedent upon the present facts, for various reasons, including the provisions of G. L. c. 65, § 36. Nevertheless, its reasoning (see e.g. pp. 39, 41–43, 47–48, 51–55) indicates that to apply substantive amendments of c. 65 with respect to property of decedents who died before the amendment would run counter to the Legislature's usual practice in such matters and also (p. 47) to usual canons of statutory construction.

In the *Magee* case, *supra,* 256 Mass. 512, 514–518, where there was a limited application of an amendment to the

property of decedents dying before the amendment, the Legislature did this by explicit provision. See St. 1919, c. 342, § 4; *Dexter* v. *Commissioner of Corps. & Taxn.* 316 Mass. 31, 55. See also St. 1902, c. 473, considered in *Stevens* v. *Bradford,* 185 Mass. 439, 440–441. An express provision, in some respects comparable, is found in the limited retroactive application (by St. 1941, c. 605, § 2; see footnote 3, *supra*) to the estates of persons dying on or after July 1, 1940, of the broadened exemption introduced by § 1 of that 1941 statute. The 1941 statute made an exemption amendment retroactive in part, for about a year, in the sense that the provision applied not only prospectively but also to the property of decedents dying after July 1, 1940, and before August 2, 1941, the statute's effective date.

In construing legislation imposing a succession tax upon a future interest coming into possession after the statute but caused or generated by the earlier death of the former owner, we would give weight to the doctrine of strict construction of taxing statutes (see *Gordon* v. *State Tax Commn.* 335 Mass. 431, 435, 437; *State Tax Commn.* v. *John Hancock Mut. Life Ins. Co.* 341 Mass. 555, 559) and also to the general principle applying only prospectively substantive (as opposed to procedural or remedial) legislative changes. See *Lindberg* v. *State Tax Commn.* 335 Mass. 141, 143; *State Tax Commn.* v. *Fitts,* 340 Mass. 575, 578, and cases cited. Cf. *Welch* v. *Mayor of Taunton, ante,* 485. We are now dealing, of course, with an exemption from tax and not with a tax. The Legislature, indeed, might be less reluctant to enact retroactive exemption legislation, which would impair only the State's right to taxes (see *Greenaway's Case,* 319 Mass. 121, 123–124; *Lindberg* v. *State Tax Commn.* 335 Mass. 141, 143–144), than to impose a retroactive tax burden on individuals. Nevertheless, amendments imposing taxes and amendments granting a new exemption from tax have many similarities. The latter are substantive in that they affect the amount to be paid in taxes. Accordingly, the principle of interpretation

favoring prospective operation of substantive amendments is relevant. In interpreting such amendments, we must consider also the principle of strict construction of tax exemptions. See *Opinion of the Justices,* 335 Mass. 771, 773; *Norwood* v. *Norwood Civic Assn.* 340 Mass. 518, 525. These two principles, taken together, point to the interpretation of the amendments of G. L. c. 65, § 1, by St. 1941, c. 605, § 1, and St. 1955, c. 596, as having no application to property of persons dying before the effective dates of the amendments, respectively (except in the case of the 1941 amendment, for the limited period mentioned in St. 1941, c. 605, § 2).

We mention certain further considerations. (1) The 1955 statute did not expressly make the reciprocal exemption retroactive for any period of time.[9] Cf. St. 1941, c. 605, § 2. (2) The provisions of § 2 of the 1941 statute show a definite legislative intention that the reciprocal provisions contained in § 1 of that act shall not apply to property of persons dying before July 1, 1940. We would hesitate to infer from the mere reënactment of these provisions in 1950 and in 1955, without including any provision similar to § 2, that the legislative intention had changed. See analogy of *Carter* v. *Burgess,* 323 Mass. 295, 300; *Old Colony Trust Co.* v. *Commissioner of Corps. & Taxn.* 331 Mass. 329, 334. (3) To conclude that the 1955 statute (which included the substance of the 1941 amendment) was to have application to the property of persons who had died before its effective date would involve (in view of the legislative policy of application of substantive amendments to property of persons dy-

---

[9] Because the 1950 and 1955 amendments contained no provision like St. 1941, c. 605, § 2, it is contended that these amendments are subject only to the restriction (see § 36, footnote 5, *supra*), that c. 65 "shall apply only to property . . . passing . . . upon the death of persons dying on or after" May 4, 1920. In view of the Massachusetts policy relating to interpretation of substantive succession tax amendments, we would require clear legislative language to lead us (a) to apply any such amendment to the property of a decedent dying before the amendment's effective date or (b) to interpret § 36 as applicable to such an amendment. We note that, in addition to preventing any application of the 1921 revision of c. 65 to the property of persons dying before May 4, 1920, one purpose of § 36 may have been to make c. 65 applicable to the property of decedents dying after May 4, 1920, and before December 31, 1920, the effective date of the original General Laws. See G. L. c. 281, § 1.

ing thereafter) "a radical change in established public policy." See *Commissioner of Corps. & Taxn.* v. *Dalton,* 304 Mass. 147, 150; *Dexter* v. *Commissioner of Corps. & Taxn.* 316 Mass. 31, 47, 54. In the absence of a clear legislative indication that some reciprocal exemption was to apply to the property of persons dying before July 1, 1940, we hold that the charitable exemptions in this case are governed by c. 65, § 1, as in effect at Fuller's death in 1933.

2. There is no unconstitutional discrimination between these charities (Family Service and Y. M. C. A.) and other charities, if G. L. c. 65, § 1, as in force in 1933, is held to apply to the two Fuller trust remainder gifts, while charitable remainder gifts, taking effect in possession and enjoyment in 1957, of decedents dying after the 1941 and 1955 amendments, are governed by those amendments. All such gifts to foreign charitable corporations made by decedents dying in 1933 are treated alike.

There is also no discrimination against these Rhode Island charities because of the special exemption granted by St. 1930, c. 86, to "The American National Red Cross, a corporation incorporated under act of Congress." There may have been sound reason in the public interest for granting this exemption to a great national charitable institution which did not exist with respect to local institutions like Family Service and Y. M. C. A.

3. A decree is to be entered in the Probate Court dismissing the petition. The commissioner is to have costs of this appeal.

*So ordered.*