GREEN ACRE BAHA'I INSTITUTE

*vs.*

TOWN OF ELIOT

York.   Opinion, September 4, 1963.

*Charles W. Smith,* for Plaintiff.

*Thomas M. Dudley, Jr.,* for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

WILLIAMSON, C. J.   This appeal to the Superior Court from the denial of a tax abatement for 1961 on property in the Town of Eliot is before us on report.   R. S., c. 91-A, §§ 51, 52.

The petitioner, a Maine Corporation, is a benevolent and charitable institution within the meaning of the exemption

provisions of the taxing statute. There has been no change in the corporate status or in the use of its property, apart from two parcels, since our decision in 1954 holding the petitioner entitled to exemption. *Green Acre Baha'i Institute* v. *Eliot,* 150 Me. 350, 110 A. (2nd) 581. The court said, at p. 352:

> "Petitioner owns and operates in respondent town certain real estate comprising a number of acres of land and certain buildings suitable for classes, lectures, concerts and the like, with facilities for lodging and board. The activities are confined to the summer season. Persons in attendance include members of the Baha'i faith, nonmembers who express a sincere interest in the faith, and citizens of the local community. There are facilities for recreation. Persons who require board and lodging pay for those services, but are required to participate in the classes and lectures. As the Baha'i faith has no official clergy, all members are expected to serve in a missionary role and expand the faith. In short, the purposes of the Institute embrace the essential elements of missionary societies which have long been deemed to possess the required attributes of benevolent and charitable institutions for tax exemption purposes."
>
> \* \* \* \* \* \* \* \* \*
>
> "The justice below found on the basis of supporting evidence that the institution was operating the property for the benevolent and charitable purposes for which it was organized, that the program was conducted in good faith and not with any purpose or intention of tax evasion, that the dominant purpose of the operation was the furtherance of its religious and missionary aims and that any charges for board or lodging were purely incidental to the dominant purpose, and that neither the institution nor any individual was deriving any profit from the operation other than reasonable compensation for services performed."

The statute under which the petitioner seeks to establish tax exemption reads:

"II.   Property of institutions and organizations.

A.   The real estate and personal property owned and occupied or used solely for their own purposes by benevolent and charitable institutions incorporated by this state, and none of these shall be deprived of the right of exemption by reason of the source from which its funds are derived or by reason of limitation in the classes of persons for whose benefit such funds are applied.

1.   No such institution shall be entitled to tax exemption if it is in fact conducted or operated principally for the benefit of persons who are not residents of Maine and if stipends or charges for its services, benefits or advantages in excess of an equivalent of $15 per week are made or taken.   The provisions of this subparagraph shall not apply to institutions incorporated as non-profit corporations for the sole purpose of conducting medical research."   R. S., c. 91-A, § 10-II-A.

Apart from the effect of subparagraph 1, enacted in 1957 (hereinafter called 1957 amendment), the property in question admittedly would be exempt from taxation.   Two questions arise:   (1) Do the facts bring the petitioner within the 1957 amendment?   (2) If so, is the 1957 amendment constitutional?

The parties have agreed "that a large majority of the registrants for the years 1960 and 1961 at the institution summer school who occupied dormitory space of the plaintiff corporation at their premises in Eliot, Maine, are residents of other States and Countries other than the State of Maine, and that a majority of the enrollees of the classes for those years were nonresidents of the State of Maine."   Without question, the "stipends or charges" are in "excess of an equivalent of $15 per week."

A pamphlet on "Green Acre A Baha'i Summer School" for the season of 1961, introduced in evidence by agreement of the parties, reads in part:

> "The place, of course, has something to do with this. Hard by an historic river, within smell of the sea, Green Acre's unspoiled woods, its river-bank and rolling meadow typify the natural beauties which, together with the climate, make New England one of the great summer recreation areas of the nation. Unobtrusively in this rustic setting, the buildings at Green Acre provide a variety of living accommodations—from cottage with kitchen to individual room. In addition, there are places of assembly and recreation, a library, a children's school, and a dining room operating cafeteria style.

> "But these things only serve the main resource of Green Acre — the people who, coming, give life and spirit to the place. Last summer they came — nearly four hundred — from thirty states and five foreign countries. This year plans have been made to take care of as many — and more."

Taxation is the rule; exemption is the exception. The burden is on the petitioner to establish its exemption. *Camp Emoh Associates* v. *Inhabitants of Lyman*, 132 Me. 67, 166 A. 59; *Green Acre Baha'i Institute* v. *Eliot, supra; Calais Hospital* v. *City of Calais*, 138 Me. 234, 24 A. (2nd) 489; *Park Association* v. *City of Saco*, 127 Me. 136, 142 A. 65.

We are satisfied from the record that the petitioner was "in fact conducted or operated principally for the benefit of" nonresidents. Accordingly the petitioner is not entitled to exemption under the statute.

We therefore reach the issue of constitutionality. Is the petitioner denied the "equal protection of the laws" under the Fourteenth Amendment to the Federal Constitution and under the Declaration of Rights in our State Constitution

(Art. I) ? The attack is upon the 1957 amendment. In the absence of the amendment no constitutional issue would here arise.

Under the 1957 amendment Corporation A, a benevolent and charitable Maine corporation, conducted or operated as is the petitioner with the same amount and type of property used for the same purposes and receiving the same charges for like services may be entitled to tax exemption. The one point of difference between Corporation A and the petitioner may be in the fact that the petitioner is, and Corporation A is not, conducted or operated principally for the benefit of nonresidents. In this event Corporation A is tax exempt. In our view such a difference is sufficient to warrant a different classification for purposes of taxation.

We cannot say that it is unreasonable for the State to require the ordinary and normal support of government when a corporation as here principally benefits nonresidents, and to remit taxes when benefits accrue to our own residents. Exemption from tax places an equivalent burden on the remaining tax payers. Loss in tax revenue from exemption must be balanced by increased assessments on others.

In our view, the denial of exemption to the property of a Maine benevolent and charitable corporation "in fact conducted or operated principally for the benefit of (nonresidents)" is a constitutional exercise of legislative power.

> "Taxation is legislative. What money shall be raised by taxation, what property shall be taxed, what exempted, rests exclusively with the Legislature to say, without any limitations except such as are imposed by express constitutional provisions. *Brewer Brick Company v. Brewer,* 62 Me. 62."
>
> *Re Maine Central Railroad Co.,* 134 Me. 217, 219, 183 A. 844.

In *Evanston Y.M.C.A. Camp* v. *State Tax Commission* (Mich.), 118 N. W. (2nd) 818, 823, the Michigan Court upheld an analogous statute granting tax exemption to a Michigan corporation "if at least 50% of the membership of the associations or organizations are residents of this state," against attack as a discrimination based on residence prohibited by the Fourteenth Amendment. The court pointed out that the Legislature had not "singled out a particular class denoted 'nonresidents' for the purpose of imposing a tax. No discrimination between 'residents' and 'nonresidents' is involved, since appellant is a Michigan corporation."

In other cases touching analogous situations, courts have recognized the broad powers of the Legislature in creating different classifications for purposes of tax exemption.

In *Camp Emoh Associates* v. *Inhabitants of Lyman, supra,* in 1933 our court sustained the exemption of a Maine corporation conducting a summer camp with upwards of two hundred and fifty children "all but one of the children having come from outside this State." The court said, at p. 70:

> "The statute enacts that a corporation such as this shall be considered benevolent and charitable, without regard to the sources from which it gets its property or funds, or limitations in the classes of persons for whose benefit the property and funds are applied." (Our present subsection A.)

In sustaining the exempt status of a New York charitable corporation conducting a social welfare camp, the Connecticut Court said in *Camp Isabella Freedman of Conn.* v. *Town of Canaan* (Conn.) 162 A. (2nd) 700, at p. 704:

> "It may be said, however, that the statute does not restrict the benefits to Connecticut residents. If such a restriction is desirable, it is a matter for action by the legislature. . . Claims of a like nature

have been advanced in the courts of three of our New England states, and each has held that in the absence of legislative enactment the property of local charitable corporations is not to be denied tax exemption because the beneficiaries of the charity are out-of-state residents. And this is so though the inference is plain that the motive activating the organization of the local corporation was to take advantage of the tax exemption. Camp Emoh Associates v. Inhabitants of Lyman, 132 Me. 67, 69, 166 A. 59; Greater Lowell Girl Scout Council, Inc. v. Town of Pelham, 100 N.H. 24, 28, 117 A. 2d 325; Old Colony Trust Co. v. Commissioner of Corporations & Taxation, 331 Mass. 329, 339, 119 N.E. 2d 175."

In *Greater Lowell Girl Scout Council* v. *Town of Pelham* (N. H.), 117 A. (2nd) 325, the town contended that since the petitioner, conducting a girl scouts camp, established and operated primarily for the benefit of nonresidents of New Hampshire, it should not be and could not be entitled to a tax exemption. The court noted there was no express provision "that a charitable society organized in this state must be a substantial benefit or advantage to the public of this state."

The court said, at p. 327:

"Undoubtedly there may be good reasons in logic and policy why charities should benefit the state if they are to enjoy tax exemption but that tax policy should be dictated by the Legislature and not originated by the Court."

A 1955 New Hampshire statute (repealed in 1957) similar in purpose to our 1957 amendment, was held applicable to taxes under consideration by the New Hampshire Court in 1960. *Appalachian Mountain Club* v. *Meredith* (N. H.), 163 A. (2nd) 808. The court said, at p. 812:

"As previously noted, the principal beneficiary of the plaintiff's activities is the public, and not the

plaintiff's members. Its stated corporate purpose, and the manner in which it is in fact carried out, neither purport to be, nor in practice are designed primarily to benefit nonresident members of the public. The test to be applied is not whether non-residents are in fact the principal beneficiaries, but whether the corporation is in fact 'operated principally for' their benefit. If in fact larger numbers of nonresidents than residents utilize the services and facilities afforded by the plaintiff's activities in general, this results from the circumstance that more interested nonresidents than residents frequent the areas which the plaintiff supervises, rather than from any purpose or course of conduct on its part calculated to benefit nonresidents in particular."

There is no suggestion of unconstitutionality in the New Hampshire case. The case turned on the construction of the statute and its application to the facts. That we reach a different result does not bear on the "equal protection" issue.

In Pennsylvania the Superior Court, in holding that a New York corporation conducting a camp for the benefit of New York City underprivileged children was entitled to tax exemption, succinctly stated the principle in these words:

"Thus the Constitution does not forbid the General Assembly to exempt from taxation institutions of purely public charity which redound to the benefit of only non-residents of the state. It is, of course, true that the General Assembly can limit the exemption to institutions of public charity from which residents of the state receive a benefit. But it is also true that the General Assembly has not done so."

*Appeal of Infants Welfare League Camp* (Pa.), 82 A. (2nd) 296, 297; commented upon with approval by the Pennsylvania Supreme Court in *In Re Assessment for the*

*Year* 1952, *etc.* (Pa.) 128 A. (2nd) 773. See also *Old Colony Trust Co.* v. *Commissioner of Corp. and Tax,* 331 Mass. 329, 119 N. E. (2nd) 175.

A contrary result is reached under the Colorado constitution and statutes in *Young Life Campaign* v. *Board of County Com'rs* (Colo.), 300 P. (2nd) 535.

The second condition that the "stipends or charges . . . are in excess of an equivalent of $15 per week" does not destroy the validity of the classification. If the Legislature may deny tax exemption to a Maine corporation conducted or operated principally for the benefit of nonresidents, there is no constitutional reason why it may not limit the denial to those institutions receiving larger sums than others for their services, and so lessening the extent of their charity.

The petitioner in support of its argument that the 1957 amendment discriminates in violation of the constitutions (whether Federal, State, or both is not material) relies heavily upon the peddler license cases. In these cases our court held unconstitutional a tax or license on the nonresident when joined with exemption for the resident. *State* v. *Cohen,* 133 Me. 293, 177 A. 403; *State* v. *Mitchell,* 97 Me. 66, 53 A. 887. It also seeks to draw an analogy from state income tax cases relating to nonresidents. See *Eliasberg Bros. Mercantile Co.* v. *Grimes* (Ala.), 86 So. 56, 11 A. L. R. 300; *Travis* v. *Yale & T. Mfg. Co.,* 252 U. S. 60.

The cases cited by the petitioner do not require that our statute be held void. The issue is whether the classification whereby the petitioner is taxed is reasonable. If the loss of tax exemption here came from an arbitrary discrimination or without reason, then the 1957 amendment would be invalid. Such however is not the fact. We have pointed out above the basis for holding as we do, that the 1957 amendment stands as a proper exercise of legislative power and is constitutional.

On application of the law, both statutory and constitutional to the facts found by us on report, we conclude the petitioner is not entitled to tax exemption. Under familiar principles we are not in this inquiry concerned with the wisdom of the policy enacted into law by the Legislature. *Camp Emoh Associates* v. *Inhabitants of Lyman, supra.*

The entry will be

> *Remanded for entry of a decree in accordance with this opinion.*