ASSESSORS OF BOSTON *vs.* FRED M. LAMSON & others, trustees.

Suffolk.    December 1, 1941. — May 2, 1944.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, RONAN, & WILKINS, JJ.

*Taxation,* Personal property tax: exemption; Appellate Tax Board. *Religious Organization. Christian Science. Words,* "Used or appropriated."

The meaning of clause Tenth of G. L. (Ter. Ed.) c. 59, § 5, must be determined by reading it in connection with the other provisions of § 5 and decisions of this court in cases arising thereunder, particularly under clause Third.

Agreed facts warranted conclusions by the Appellate Tax Board that the dominant purpose in publishing The Christian Science Monitor, an international daily newspaper of wide circulation having each day a religious article based on the teachings of Christian Science, was to promote that religious faith; and that personal property held by the trustees of a publishing society and used in publishing the Monitor and various religious periodicals and publications dealing with Christian

Science was "used or appropriated for religious . . . purposes" within G. L. (Ter. Ed.) c. 59, § 5, Tenth.

The words "used or appropriated" in G. L. (Ter. Ed.) c. 59, § 5, Tenth, refer to a dominant, not an exclusive, use.

Agreed facts respecting the earning of profits by trustees of a society in publishing religious publications in furtherance of Christian Science and the payment of the profits into the "general fund" of a church of that faith, and the use of such profits by the directors of the church to defray expenses in connection with the real estate on which the publishing was conducted and for the activities of various departments of the church, did not show error of law in a conclusion by the Appellate Tax Board that "the income from" the personal property used in the publishing "is used or appropriated for religious purposes" within G. L. (Ter. Ed.) c. 59, § 5, Tenth.

Whether conclusions and a general finding by the Appellate Tax Board were warranted on agreed facts was a question of law reviewable by this court on appeal under G. L. (Ter. Ed.) c. 58A, § 13, as amended.

A decision by the Appellate Tax Board, that personal property held by the trustees of the Christian Science Publishing Society and used in the publication of a newspaper, periodicals and other literature in furtherance of Christian Science was exempt from taxation under G. L. (Ter. Ed.) c. 59, § 5, Tenth, because both the property and the income resulting from such use of it were "used or appropriated for religious . . . purposes," was warranted on agreed facts.

APPEAL from a decision by the Appellate Tax Board.

The board ruled that "the trustees have adhered to the declared religious purposes of the trust in the use of its property. The . . . [trustees] are, therefore, entitled to an exemption on the ground that the principal of the trust is used or appropriated for religious purposes within the meaning of the statute. The property is exempt from taxation on the further ground that the income from the property is used or appropriated for religious purposes."

The case was argued at the bar in December, 1941, before *Field*, C.J., *Donahue, Dolan, & Cox*, JJ., and, after the retirement of *Donahue & Cox*, JJ., was submitted on briefs to *Lummus, Qua, Ronan, & Wilkins*, JJ.

*K. Hern*, Assistant Corporation Counsel, (*J. W. Kelleher*, Special Assistant Corporation Counsel, with him,) for the assessors.

*W. A. Dane*, (*G. W. Howe & J. T. Phelps* with him,) for the taxpayers.

DOLAN, J.  This is an appeal by the board of assessors

of the city of Boston, hereinafter referred to as the assessors, from the decision of the Appellate Tax Board, hereinafter referred to as the board, ordering an abatement of the tax assessed in 1935 on certain personal property to the succeeding trustees under a deed of trust of The Christian Science Publishing Society. The property upon which the tax was assessed consisted of machinery, furniture and fixtures, materials and supplies for printing, office libraries and finished books and pamphlets located in a building at Massachusetts Avenue and Norway Street in the city of Boston. The property involved was valued by the assessors at $1,000,000, which was its fair value. The tax assessed thereon was $37,000 and was paid by the trustees of The Christian Science Publishing Society, hereinafter referred to as the trustees, together with interest thereon of $4,268.05 and costs of thirty-five cents, making the total payment $41,268.40. The application of the trustees for abatement of the tax was refused by the assessors and the trustees appealed seasonably to the board.

The case was submitted to the board upon a statement of agreed facts. The specifications of error set forth in the assessors' appeal relate to the denial of certain of their requests for rulings, and to the granting of the trustees' requests for rulings. See G. L. (Ter. Ed.) c. 58A, § 13, as amended. The specifications of error in the refusal of the board to make particular findings of fact have no standing. Summed up, the specifications of error of the assessors properly raise but one question for determination, namely, whether as matter of law the agreed facts warrant the conclusions of the board and the general finding for the trustees. *Assessors of Boston* v. *Garland School of Home Making*, 296 Mass. 378, 383–384, and cases cited.

The relevant facts are these: The trustees derive their title to the property involved under a deed of trust executed on January 25, 1898, by Mary Baker G. Eddy, the founder of the Christian Science religion. (See *Eustace* v. *Dickey*, 240 Mass. 55.) By that deed title to certain goods and chattels connected with a publishing business conducted for the promotion of the interests of Christian Science was

transferred to the trustees named therein. The declared purpose of the trust is "for . . . more effectually promoting and extending the religion of Christian Science as taught by me" (Mrs. Eddy). Under the terms of the trust, it is provided that the principal place of business of the publishing society should be in Boston, and that the net earnings of the business be paid over in their entirety to The First Church of Christ, Scientist, in Boston, Massachusetts. The trustees use the personal property involved for the purpose of publishing four periodicals, The Christian Science Journal, a monthly publication, the Christian Science Quarterly, the Christian Science Sentinel, a weekly publication, and The Herald of Christian Science, which is published monthly in German and French with alternate pages of English. A Scandinavian edition is also published quarterly, containing an equal number of articles in Danish, Norwegian, and Swedish; and a quarterly edition in Dutch and a quarterly edition in braille are also published. All editions of The Herald of Christian Science are devoted entirely to the religion of Christian Science. They contain no matter concerned with any subject other than the religion of Christian Science. Many books, pamphlets and leaflets, pictures and postcards, leather cases and covers for books, and reading room and Sunday school supplies are likewise published or prepared under the supervision of the trustees. The board found that all of these general publications were religious publications. The agreed facts warrant that conclusion and the assessors do not dispute that finding. The trustees also publish a newspaper called The Christian Science Monitor which is an organ of The First Church of Christ, Scientist, in Boston. It had an average daily circulation in 1935 of one hundred forty-seven thousand two hundred eighty-one copies. This paper was founded by Mrs. Eddy in 1908. She gave the paper its name and chose its motto. Its editorial board is appointed by the directors of The First Church of Christ, Scientist, in Boston. She insisted that "Christian Science" be a part of the name of the Monitor. The Monitor is an international daily newspaper with correspondents located all over the world. It is published in three editions

known respectively as the Atlantic, the Central, and the Pacific edition. It carries a religious article daily, based on the teachings of Christian Science, and this article is translated into fifteen different languages. These religious articles are the only ones that are translated into foreign languages. The trustees decline at least fifty per cent of advertising which other newspapers in general accept. Its policy and practice are against emphasis being laid upon matters involving crime, scandal and sensation. And in its editorial matter emphasis is laid upon the moral values of temperance, peace and social justice. The circulation of the Monitor is promoted and extended principally by members of Christian Science churches throughout the world. There were no paid solicitors of subscriptions in 1935. And in that year four hundred twenty-one thousand sixty-three free copies were distributed. "The Trustees maintained during 1935 a fund known as the Donation Fund and placed therein all money received from individuals who wished to donate Christian Science Periodicals for those who could not at the time afford to subscribe. During 1935 subscriptions were entered and paid for from this fund" to the Monitor in the amount of $21,092.66. The gross income from all the publications of the society for the year 1935 was $5,108,332.19. Operating expenses amounted to $4,360,587.56. The net income amounted to $747,744.63. The Monitor was published at a loss in that year of $186,845.01. No part of the earnings was distributed or paid out to individuals or members or employees of the trustees except to those regularly employed and on the payroll. The net income of the society for the year in question was paid as provided in the trust instrument to the treasurer of The First Church of Christ, Scientist, in Boston. The loss sustained in the publication of the Monitor was made up by an appropriation from the profit accruing from the other publications. Real estate taxes on the land and building (owned by the church) in which the business is carried on, insurance and miscellaneous expenses connected with the real estate were paid by the treasurer of the church, by order of its board of directors, in accordance with the Church Manual, which was adopted

in its final form in 1895 and constitutes the rules and by-laws regulating the government of the church. The manual cannot be amended or changed. The balance of the income was deposited in the "General Fund" of the church. Money paid into that fund is not segregated but loses its identity, and can be disbursed by the treasurer only under the direction of the "Christian Science Board of Directors" in accordance with the rules and by-laws contained in the Church Manual. The Appellate Tax Board concluded that the dominant purpose of the trustees in publishing the Monitor is to serve the religious cause of Christian Science, and that it is a missionary organ serving to carry the name and principles of Christian Science to all parts of the world and to cultivate good will for the Christian Science movement.

The assessors' contentions are that the board erred in ruling that the property in question is used or appropriated for religious purposes within the meaning of the statute, and in ruling that the income from the property is used or appropriated for religious purposes and that therefore the property was exempt from taxation.

General Laws (Ter. Ed.) c. 59, § 5, Tenth, the governing statute, provides for exemption from taxation of "Personal property owned by or held in trust within the commonwealth for religious organizations, whether or not incorporated, if the principal or income is used or appropriated for religious, benevolent or charitable purposes."

We have not been referred to nor have we discovered any case that has arisen hitherto under this clause. It is not, however, to be read alone, but must be read together with all the provisions of § 5 relative to exemption from taxation in accordance with the familiar rule that "A statute as a whole ought, if possible, to be so construed as to make it an effectual piece of legislation in harmony with common sense and sound reason." *Morrison* v. *Selectmen of Weymouth*, 279 Mass. 486, 492. *Acford* v. *Auditor of Cambridge*, 300 Mass. 391, 395, and cases cited. *Tilton* v. *Haverhill*, 311 Mass. 572, 577–578. Thus considered, much light is thrown upon the construction of clause Tenth, particularly by cases that have arisen under § 5, Third,

which, so far as here pertinent, provides for exemption from taxation of "Personal property of literary, benevolent, charitable and scientific institutions and of temperance societies incorporated in the commonwealth, the real estate owned and occupied by them or their officers for the purposes for which they are incorporated, and real estate purchased by them with the purpose of removal thereto, until such removal, but not for more than two years after such purchase, except as follows: (a) If any of the income or profits of the business of the institution or corporation is divided among the stockholders or members, or is used or appropriated for other than literary, educational, benevolent, charitable, scientific or religious purposes, its property shall not be exempt."

The interpretation of § 5, Third, was considered in connection with the taxation of certain real estate in *Assessors of Boston* v. *Garland School of Home Making*, 296 Mass. 378, where it is said, at page 384, that the "answer to the question 'whether the institution is . . . charitable . . . within the meaning of . . . [that word] in the statutes' 'will depend upon the language of its charter or articles of association, constitution and by-laws, and upon the objects which it serves and the method of its administration' (*Little* v. *Newburyport*, 210 Mass. 414, 415), that is, 'upon its purposes declared and the work done.'" See also *Assessors of Boston* v. *Boston Pilots' Relief Society*, 311 Mass. 232, 236–237. We are of opinion that this principle applies with equal force to the determination of whether the taxpayer in the present case holds the personal property in question in trust for a religious organization and whether "the principal or income [therefrom] is used or appropriated for religious . . . purposes," within the meaning of the word religious and of the governing statute. G. L. (Ter. Ed.) c. 59, § 5, Tenth. In the determination of that question it must also be kept in mind that the provision of § 5, Third, exempting personal property is broader than that exempting real estate owned and occupied by a charitable institution for its corporate purposes and that such an "institution as the beneficial owner of real estate does not enjoy the same exemption

under said § 5, Third, as that given to it as the beneficial owner of personal property . . . [and that] personal property owned by or held in trust for religious organizations . . . [is] granted an exemption.  G. L. (Ter. Ed.) c. 59, § 5, Fifth, Sixth, Tenth, Eleventh.  See also . . . c. 59, § 3A."  *Animal Rescue League of Boston* v. *Assessors of Bourne*, 310 Mass. 330, 335–336.   And in *Assessors of Weston* v. *Trustees of Boston College*, 296 Mass. 399, 401–402, the court said: "It has been decided that personal property held under an express trust for the benefit of a charitable corporation is exempt from taxation."  The same rule applies to personal property held in trust for religious organizations under § 5, Tenth.

We are of opinion that in the present case the agreed facts warranted the finding of the board that the principal of the trust is used and appropriated for religious purposes within the meaning of the statute and the finding of the board that the dominant purpose of the trustees in publishing The Christian Science Monitor is to serve the religious cause of Christian Science.  And the ruling of the board, that in "using the words, in clause 10, 'if the principal or income is used or appropriated for religious, benevolent or charitable purposes' we [the board] are of the opinion that the Legislature had in mind not an exclusive use but a dominant use such as is described by the court in . . . *Emerson* v. *Milton Academy*," 185 Mass. 414, was right.  This ruling also finds support in such cases as *Thayer Academy* v. *Assessors of Braintree*, 232 Mass. 402, *Newton Centre Woman's Club, Inc.* v. *Newton*, 258 Mass. 326, and *Springfield Young Men's Christian Association* v. *Assessors of Springfield*, 284 Mass. 1, 8.  It is true that in the cases just cited the questions related to the exemption from taxation of the real estate of the institutions involved under § 5, Third; but for reasons already given the same principle applies with even greater force in the present case where the property involved is personal property.

The assessors contend that the board erred in finding and ruling that "the income from the property is used or appropriated for religious purposes," stressing the various ex-

penditures by the treasurer of the church from the general fund for such purposes as payment of taxes and other expenses on the building occupied by the publishing society, for First Reader's residence, Committee on Business, Committee on Finance and similar committees of the church, as well as appropriations for the Christian Science Benevolent Associations, Christian Science Pleasant View Home, Christian Science Thrift Association, and the Christian Science Trustees for Gifts and Endowments. There is nothing in the record to show that the activities in these departments of the church itself were such as to require a ruling by the board that the dominant purpose of all was not connected with the religious purposes of the church itself, or that the operating expenses of the church itself were not fair and reasonable considering its world-wide activities. And within the bounds of reasonableness the officers of the church could determine what uses of its income would promote the religious purposes for which it was established, and, provided there was adherence in the main to the declared purpose of religion in the appropriation of its general fund, incidental variations did not destroy the right to exemption. See *Springfield Young Men's Christian Association* v. *Assessors of Springfield*, 284 Mass. 1, 8. The board's finding of reasonableness and good faith with respect to these matters cannot be said as matter of law to have been erroneous on the agreed facts. *Assessors of Boston* v. *Garland School of Home Making*, 296 Mass. 378, 383.

The assessors' argument that the application of a part of the profit derived from its other publications, which were religious in character, to make up the loss sustained in connection with the publication of the Monitor was the use or appropriation of income to a nonreligious purpose, must fail in the light of the warranted findings of the board that the dominant purpose of the trustees in publishing the Monitor is "to serve the religious cause of Christian Science" and that it "is a missionary organ serving to carry the name and principles of Christian Science to all parts of the world and to cultivate goodwill for the Christian Science movement."

The case at bar is distinguishable on the facts from *Hairenik Association, Inc.* v. *Boston,* 313 Mass. 274. In that case the tax was assessed upon real estate and one of the purposes of the plaintiff corporation expressed in the articles of its incorporation was to engage in a general printing and publishing business, and it was held that the occupation of the premises was essentially commercial in character and that the job printing business there conducted had no relation to the charitable purposes of the corporation. In the instant case the board has found warrantably upon the agreed facts that the publications of the society including that of The Christian Science Monitor were to serve the religious cause of Christian Science.

The question whether the ultimate finding of the board for the taxpayer was warranted by the agreed facts is a question of law. *Assessors of Boston* v. *Garland School of Home Making,* 296 Mass. 378, 383, and cases cited. In our opinion that finding was warranted as matter of law upon the agreed facts.

It follows from what we have said that abatement must be granted in the sum of $41,268.40, with interest at the rate of five per cent per annum from October 9, 1937 (the date of payment of the tax and interest and costs) until October 16, 1939 (the effective date of St. 1939, c. 366, § 1), and thereafter at the rate of four per cent per annum, together with the costs of this appeal. See *Assessors of Quincy* v. *Boston Consolidated Gas Co.* 309 Mass. 60, 72–73.

*So ordered.*