BOARD OF ASSESSORS OF BOSTON *vs.* THE VINCENT CLUB
(and three companion cases).

Suffolk.    April 6, 1966. — June 6, 1966.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Taxation,* Real estate tax: exemption.  *Charity.*  *Corporation,* Charitable
corporation.

Real estate of a corporation was exempt from taxation under G. L. c. 59,
§ 5, Third, where it appeared that the corporation was organized for the
purpose of financially aiding a public charitable hospital and did so by
the proceeds of amateur revues given annually by the corporation and
by a part of its members' dues, and that the real estate was solely occu-
pied and used, in strict conformity with the corporate purpose, for neces-
sary administrative activities of the corporation and meetings, including
rehearsals, for production of the revues.

APPEALS from a decision by the Appellate Tax Board.
*William H. Kerr* for the Board of Assessors of Boston.
*H. Lawrence Tafe, III,* for The Vincent Club.

WILKINS, C.J.    These are four appeals by the assessors
from a decision of the Appellate Tax Board granting abate-
ments to The Vincent Club of taxes for the years 1961 and
1962 assessed against its land and buildings at 71 and 73
Brimmer Street, Boston.    The petitions before the Appel-
late Tax Board were under formal procedure and by way
of appeal by the taxpayer from the refusal of the assessors
to make an abatement.    The facts were agreed.

The issues are whether the taxpayer is a charitable or-
ganization and is exempt from taxation of its real estate
pursuant to G. L. c. 59, § 5, Third (as amended through
St. 1957, c. 500, § 1), which exempts ''real estate owned by
. . . a charitable organization and occupied by it or its
officers for the purposes for which it is organized.''

The taxpayer was incorporated on March 19, 1958, under
G. L. c. 180.    Its purposes, as stated in its charter, are ''To
raise funds in aid of the Vincent Memorial Hospital of Bos-

ton, Massachusetts, by giving annually one or more money-raising activities, and by turning over annually to the Vincent Memorial Hospital $10 from each member's dues. All such gifts shall be unrestricted and shall be used at the discretion of the Board of Trustees of the Hospital. No part of the funds, property or net earnings of this corporation shall inure to the benefit of any individual, nor shall any substantial part of the activities of the corporation be the carrying on of propaganda, or otherwise attempting to influence legislation, nor shall the corporation participate in, or intervene in (including the publishing or distributing of statements) any political campaign on behalf of any candidate for public office. The corporation may at any time be dissolved by a vote of at least two-thirds of all the members of the corporation, provided that upon dissolution all its property and assets be transferred to the Vincent Memorial Hospital.''

Upon incorporation the taxpayer succeeded an unincorporated association, also known as The Vincent Club, formed in 1892 to raise money in support of the Vincent Memorial Hospital. The hospital is a public charity, incorporated in 1890 ''for the purpose of establishing a hospital for the diseases of women, as a memorial to the late Mrs. J. R. Vincent,'' a well known actress in the last century. The hospital is the gynecological unit of the Massachusetts General Hospital, where research and treatment in the fields of cancer, gynecology, and endocrinology are conducted.

From 1892 until incorporation in 1958, The Vincent Club contributed more than $1,000,000 to the hospital, and since incorporation has contributed $231,000, making a total of unrestricted gifts of more than $1,250,000 through 1962. In both 1961 and 1962 the gift amounted to $47,000, made up of the net income ($30,000) from the annual fund-raising activity plus $10 out of the $15 annual dues collected from members, of whom there were over 1,800 in both years.

The principal activity of the taxpayer is its annual money-raising activity, which consists of an annual show in

the nature of a revue presented at New England Mutual Hall each April. It has been presented annually since 1892.

The real estate at 71–73 Brimmer Street consists of two two-story brick buildings connected as a single unit and occupied and utilized only in strict conformity with the aims and purposes set out in its charter and by-laws. No commercial activities are conducted on the premises, no part of which is rented or made available for hire to outside organizations or to members or groups of members for social functions. No part of the funds of the club inures to the benefit of any member.

The appellant claims that there was error in the denial of its fourth request, which was that "An essential of a legal charity is that it should not be a money-making organization." Either this was completely immaterial, or it was at least an indirect allegation that the taxpayer is such an organization. In any event, it was rightly denied.

The taxpayer's status as a charitable organization is disputed by the appellant. A charitable organization is defined in G. L. c. 59, § 5, Third, as "a literary, benevolent, charitable or scientific institution or temperance society incorporated in the commonwealth." Whether the taxpayer is one depends upon "the language of its charter or articles of association, constitution and by-laws, and upon the objects which it serves and the method of its administration." *Little* v. *Newburyport,* 210 Mass. 414, 415. Or, as otherwise expressed, upon the declared purposes and the actual work performed. *Assessors of Boston* v. *Garland Sch. of Home Making,* 296 Mass. 378, 384. *Assessors of Boston* v. *Lamson,* 316 Mass. 166, 172. *Assessors of Boston* v. *World Wide Bdcst. Foundation of Mass. Inc.* 317 Mass. 598, 603. *Old Colony Trust Co.* v. *Commissioner of Corps. & Taxn.* 331 Mass. 329, 335. *Massachusetts Medical Soc.* v. *Assessors of Boston,* 340 Mass. 327, 332. *Carroll* v. *Commissioner of Corps. & Taxn.* 343 Mass. 409, 410. According to the charter of the club, its purposes are "To raise funds in aid of the Vincent Memorial Hospital . . . by giving annually one or more money-raising activities" and by contributing the major part of its members' dues.

The appellant's attempt to make what is tantamount to a modification of the charitable purposes of the taxpayer involves classifying its fund-raising activity in the category with commercial transactions. This is not a money-making organization which distributes earnings or profits to members or stockholders.

The production of a revue is attacked as incompatible with activities appropriate to a charitable organization. It is described by the appellant as being quite different from money-raising by campaigns soliciting direct contributions to the hospital, which is conceded to be a legitimate function of a charitable organization. This is a necessary concession in the wake of the quaint statement in some of our decisions, that a charity is "not confined to mere almsgiving." See, for example, *New England Sanitarium* v. *Stoneham,* 205 Mass. 335, 342; *Assessors of Boston* v. *Boston Pilots' Relief Soc.* 311 Mass. 232, 237. We cannot accept the appellant's argument. What the taxpayer does in putting on an amateur show and soliciting program ads far more closely resembles the solicitation of charitable funds than it does those activities held not to be charitable in the cases relied upon by the appellant. The appellant even makes the claim that if this taxpayer should be ruled exempt, "any organization raising money for charitable uses by conducting a factory, running a shop or engaging in any *other* [emphasis supplied] commercial activity would be exempt." The precise point of divergence from our opinion is the word "other." We do not agree that the taxpayer is engaged in a commercial activity. No case so holds. Cases relied upon by the appellant provide no support for the assertion. *Trustees of the Chapel of the Good Shepherd* v. *Boston,* 120 Mass. 212, 214 (rental to public of lodging house rooms of chapel organized for religious and charitable purposes). *Mount Hermon Boys' Sch.* v. *Gill,* 145 Mass. 139, 149 (dictum: farm land used for profit, and not for educational purpose). *Salem Lyceum* v. *Salem,* 154 Mass. 15 (renting of hall to public other than for diffusing knowledge, the purpose of incorporation). *Boston*

*Symphony Orchestra, Inc.* v. *Assessors of Boston,* 294 Mass. 248, 257 (rental of hall for other than charitable purpose of concerts). *Hairenik Assn. Inc.* v. *Boston,* 313 Mass. 274, 279–280 (use of building for job printing unrelated to charitable purpose). *McKay* v. *Morgan Memorial Coop. Indus. & Stores, Inc.* 272 Mass. 121, 126 (merchandise sales in store render defendant liable in tort for ordinary negligence).

The appellant denies that the real estate is occupied for the charitable purposes for which the corporation is organized. This question merges into that just considered as to whether the taxpayer is a charitable organization. In fact, many cases cited by the appellant on the first issue are more pertinent authorities on the second. See *Mount Hermon Boys' Sch.* v. *Gill, supra,* 148; *Salem Lyceum* v. *Salem, supra,* 16. "Such occupancy means something more than that which results from simple ownership and possession. It signifies an active appropriation to the immediate uses of the charitable cause for which the owner was organized. The extent of the use, although entitled to consideration, is not decisive. But the nature of the occupation must be such as to contribute immediately to the promotion of the charity and physically to participate in the forwarding of its beneficient objects." *Babcock* v. *Leopold Morse Home for Infirm Hebrews & Orphanage,* 225 Mass. 418, 421–422, and cases cited. Without unnecessary detailed elaboration it is clear that the real estate is used for necessary administrative purposes of the corporation and meetings, including rehearsals, directed to producing the show.

The tax board justifiably inferred that the taxpayer "is a charitable organization in purpose and in the work done," and that "[t]he real estate in question is owned and occupied by it solely in carrying out the charitable purpose for which it was incorporated . . . ." These conclusions are well within the authority of *Molly Varnum Chapter, D. A. R.* v. *Lowell,* 204 Mass. 487, 488, 493–494.

The decision of the Appellate Tax Board is affirmed with costs to the taxpayer.

*So ordered.*