THE CHILDREN'S HOSPITAL MEDICAL CENTER *vs.* BOARD
OF ASSESSORS OF BOSTON
(and four companion cases[1]).

Suffolk.    May 2, 1967. — June 28, 1967.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Taxation,* Real estate tax: exemption.  *Charity.   Corporation,* Charitable
corporation.  *Hospital.   Laundry.*

Real estate of a charitable medical center organization was exempt from
taxation under G. L. c. 59, § 5, Third, as amended through St. 1957,
c. 500, § 1, where it appeared that the center had bought the property
for the purpose of a laundry and had actually occupied it to the extent
of moving employees into it to supervise arrangements for its conver-
sion from a garage into a laundry, and had spent money for that pur-
pose, whether it operated the laundry by itself for its own use or "held
[the property] in trust" for an association being formed under G. L.
c. 180 by the center and certain charitable hospital corporations for the
single purpose of getting their large volume of laundry work processed
on a coöperative basis in an economic, speedy, and sanitary manner.
[37–38, 44]
Personal property and real estate of a corporation constituting a plant in
which it processed hospital laundry were exempt from taxation under
G. L. c. 59, § 5, Third, as amended through St. 1957, c. 500, § 1, where
it appeared that the corporation had been financed and incorporated
under G. L. c. 180 by charitable hospital organizations for the single
purpose of getting their large volume of laundry work, an integral part
of the operation of each, processed on a coöperative basis in an eco-
nomic, speedy, and sanitary manner, even though the corporation was
reimbursed for its costs.  [41, 44]

APPEALS from a decision by the Appellate Tax Board.

*James D. St. Clair (Blair L. Perry & A. Frederick Rich-
ard* with him) for the taxpayers.

*William H. Kerr (Frederick M. Donovan,* Assistant Cor-
poration Counsel, with him) for the Board of Assessors of
Boston.

WILKINS, C.J.    These are five appeals from a decision of
the Appellate Tax Board refusing abatements of taxes pur-

---

[1] The companion cases are by Hospitals Laundry Association, Inc., against
the Board of Assessors of Boston.

suant to G. L. c. 59, § 5, as amended. The Children's Hospital Medical Center (Children's) claims exemption from a real estate tax for 1961, and Hospitals Laundry Association, Inc. (Association) claims exemptions on both realty and personalty for 1962 and 1963. The petitions before the Appellate Tax Board were under formal procedure and by way of appeal from the refusal of the assessors to make the abatements. The tax board made findings of fact and a report at the request of the taxpayers. G. L. c. 58A, § 13, as amended. The assessors placed a valuation on the real estate of $325,000 and on the personal property of $100,000. For 1961 Children's paid a tax of $32,695 with interest. For 1962 and 1963, respectively, Association paid taxes on the real estate of $32,435 and $31,200 with interest and on the personalty of $9,980 and $9,600. As no question of valuation is presented, no description of the property is given.

Children's is a charitable corporation resulting from incorporation, consolidation, and mergers under St. 1869, c. 44; St. 1954, c. 261 and St. 1959, c. 283. In St. 1959, c. 283, § 5, powers are conferred ". . . to form with . . . such other charitable corporations . . . as may be mutually agreed upon, an alliance for, and otherwise to co-operate in, establishing, maintaining and operating a medical center and to render mutual services and operate one or more plants in common in connection with such medical center."

The real estate at 173–175 Ipswich Street, Boston, and the personal property therein were owned by Children's on January 1, 1961, and by Association, its successor in title, on January 1, 1962 and 1963.

The "evolution" of Association began in 1959 when Children's, Massachusetts General Hospital, and six other Boston hospitals formed a committee to investigate the establishment of a central laundry which would serve these hospitals on a coöperative basis. The groundwork for the formation of a coöperative laundry was established by St. 1954, c. 261, and St. 1959, c. 283. The committee analyzed many factors, concluding that in the locality the pro-

353 Mass. 35                                                          37

Children's Hospital Medical Center v. Board of Assessors of Boston.

jected volume of laundry could not be handled commercially; and that "a central laundry could do a better job" for all the hospitals and cheaper than if each attempted to act on its own.

On March 21, 1961, pursuant to the committee report, Association was incorporated under G. L. c. 180 by representatives of five hospitals.[1]

The purposes of Association given in its articles of incorporation are: "To purchase, lease, construct, or otherwise acquire, equip, hold, maintain and operate one or more buildings, equipment and other facilities for the doing of laundry work, supplying linen for and rendering services only to private Massachusetts hospitals not operated for profit and licensed under the laws of the Commonwealth of Massachusetts; hospitals operated by the Commonwealth of Massachusetts or by any city, town, county or other governmental body in Massachusetts and medical schools in Massachusetts not operated for profit." Its articles of incorporation further provide that no part of the net earnings shall inure to the benefit of any individual, and that in the event of dissolution "its property shall be transferred to any non-profit organization."

The hospitals formed the alliance for the single purpose of getting their large volume of laundry processed on an economic, speedy, and sanitary basis. On July 1, 1960, Children's took title to the real estate for the purpose of a laundry. The dominant purpose of owning and occupying the realty by Children's was the operation of a laundry or holding it as a trustee until Association should be incorporated. Prior to January 1, 1961, Children's expended funds for the services of laundry management consultants, architects, and engineering advice, and made disbursements for renovations and other items relating to converting the property from a garage into a laundry plant. Actual occupation by Children's was made in the spring of 1960, prior to taking title, when two employees of Children's moved

---

[1] Children's, Massachusetts General Hospital, Massachusetts Memorial Hospital, Massachusetts Eye and Ear Infirmary, and Peter Bent Brigham Hospital.

into the premises and supervised arrangements for the conversion. On August 2, 1961, Children's by deed transferred the real estate to Association. Each organizing hospital made a substantial financial contribution to Association during the formative period and entered into a contract under which Association would do all its laundry work for ten years. "Details of the contract were not spelled out." On October 12, 1961, Association's laundry went into actual operation. Its laundry services up to the time of the tax board's findings were confined to the five allied hospitals, and the dispensary of the Massachusetts Institute of Technology.

By having Association do their laundry, the allied hospitals are relieved of investing the capital necessary to establish and maintain laundries of their own. Operating a laundry is an administrative burden. A laundry occupies valuable space which generally could be used for better purposes.

For its first fiscal year ending September 30, 1962, Association processed 9,400,000 pounds of laundry. For the fiscal year ending September, 1963, it processed 12,700,000 pounds.

Prior to January 1, 1961, Children's operated its own laundry at 300 Longwood Avenue, Boston. This was a two-story building having an area of about 5,000 square feet. It employed thirty-three persons and had an annual volume of about 2,000,000 pounds. It ceased to be used as a laundry in 1961 when the operation of Association began. The bulk of the volume of laundry done by Association from 1961 through 1963 was from the Massachusetts General Hospital. The latter hospital formerly had its laundry on the first floor and basement at its present hospital site. The laundry occupied about 13,000 square feet, and employed sixty-six persons, who operated on two shifts. It handled an average annual poundage of about five to five and one-half million pounds. In January, 1960, this laundry ceased operation, and its work was turned over to a commercial service until Association began operation.

353 Mass. 35                                                      39

Children's Hospital Medical Center *v.* Board of Assessors of Boston.

The tax board gave as reasons for denying exemption under G. L. c. 59, § 5, Third: (1) Children's, the 1961 taxpayer, "is a charitable organization, but it did not occupy or own the real estate . . . for the purposes for which it was organized." (2) Association, the 1962 and 1963 taxpayer, has for its "dominant purpose and activity . . . the doing of laundry work and supplying linen for certain private Massachusetts hospitals."

General Laws c. 59, § 5, provides: "The following property shall be exempt from taxation: . . . . Third [as amended through St. 1957, c. 500, § 1], Personal property of a charitable organization, which term, as used in this clause, shall mean (1) a literary, benevolent, charitable or scientific institution . . . incorporated in the commonwealth . . . and real estate owned by or held in trust for a charitable organization and occupied by it or its officers for the purposes for which it is organized or by another charitable organization or organizations or its or their officers for the purposes of such other charitable organization or organizations; and real estate purchased by a charitable organization with the purpose of removal thereto, until such removal, but not for more than two years after such purchase . . . ."

The exemption of personal property by § 5, Third, is broader than the exemption of real estate owned and occupied by a charitable institution for its corporate purposes. *Assessors of Boston* v. *Lamson,* 316 Mass. 166, 172. All personalty of a charitable corporation is exempt regardless of use. *Animal Rescue League of Boston* v. *Assessors of Bourne,* 310 Mass. 330, 335.

In this court, review pursuant to G. L. c. 58A, § 13, is in accordance with the standards set forth in the State Administrative Procedure Act. G. L. c. 30A, § 14 (8). *State Tax Commn.* v. *Sears Roebuck & Co.* 344 Mass. 471, 472. One aspect of review here is that a general finding stands if supported by subsidiary findings but is set aside if inconsistent with them. *Assessors of Boston* v. *Garland Sch. of Home Making,* 296 Mass. 378, 383–384. *Assessors of Bos-*

*ton* v. *Boston, Revere Beach & Lynn R.R.* 319 Mass. 378, 379.
*Jacob's Pillow Dance Festival, Inc.* v. *Assessors of Becket,*
320 Mass. 311, 313. *Brockton Knights of Columbus Bldg.*
*Assn. Inc.* v. *Assessors of Brockton,* 321 Mass. 110, 114.

Respecting the 1961 tax, the finding that Children's
bought the real estate for the purpose of a laundry to be
operated by itself or to hold as trustee for Association
seems conclusive. In our view, it is not important which
it was. If the operation was to be by Children's, this would
seem to fall within the express finding: "If . . . Chil-
dren's . . . bought and operated this Ipswich Street prop-
erty for its own use and had no connection with any hospi-
tal, other than those mentioned in [c. 283 of] the Acts of
1959, it would appear on those facts alone, that it would be
entitled to an exemption." If the realty was to be "held in
trust" for Association, it should fall within that express
phrase in § 5. But the tax board's decision purports to
deny that Association is a charitable corporation by find-
ings that "its dominant purpose or dominant use and ac-
tivity is the doing of laundry work and supplying of linen
for certain private Massachusetts hospitals or govern-
mental agencies,"[1] and that "the processing of laundry by
a hospital or medical center is only an incidental part of an
overall hospital operation, although an important one."

It is fallacious to base the denial of an exemption to
Children's in 1961 upon the truism that "a charitable in-
stitution cannot have an exemption upon real estate that it
holds in trust but for a purpose other than that for which
it was organized." See, for example, *Animal Rescue*
*League of Boston* v. *Assessors of Bourne,* 310 Mass. 330,
337. Rightly viewed, the real estate on Ipswich Street is
not held for a purpose other than that for which the hospi-
tals were organized. The report of the tax board concedes
that Children's and all other hospitals mentioned in the
pertinent legislative acts are or were charitable organiza-
tions which would fall within the provisions of G. L. c. 59,
§ 5, Third, while operating as a medical center. Likewise,

---

[1] No work has been done for any governmental agency, so far as appears.

it is there conceded that if Children's bought and operated the property for its own use and had no connection with any hospital other than those mentioned in St. 1959, c. 283, it would be entitled to an exemption. Entitled to very slight weight are the arguments that Children's never owned the property while laundry work was performed there; and that its laundry work was then being done elsewhere.

Also, laundry work, as is well known, and as has been substantially found in these appeals, is an indispensable feature of hospital operation. To attempt to dispose of it altogether by denominating it a minor purpose is equivalent to saying that the whole is not composed of one of its most important parts. It unsoundly fragmentizes the component activities of a hospital.

It should not be fatal to be incorporated to perform laundry work in this circumstance. Association is not engaged in a commercial activity. The record is meager, but there is no finding, and no evidence warranting a finding, that the allied hospitals do not contribute to the operation of their joint laundry on a nonprofit basis. The statement in the assessors' brief that the work was "at least" on a cost basis is not sustained by the record. It is not significant that the allied hospitals had to some extent (unstated in the record) a contractual relation with Association. The assessors also state in their brief that laundry done by members of the Vincent Club[1] or the Newton Centre Woman's Club[2] for a hospital would be in essence a voluntary charitable contribution. But it draws the line apparently because Association's costs were reimbursed. The fact that a corporation makes some charge for its services, however, does not necessarily destroy its charitable character. *Thornton* v. *Franklin Square House,* 200 Mass. 465, 466–467. *M.I.T. Student House, Inc.* v. *Assessors of Boston,* 350 Mass. 539, 540–542.

The tax board report states: "It is doubtful that the

---

[1] *Assessors of Boston* v. *Vincent Club,* 351 Mass. 10.

[2] *Newton Centre Woman's Club, Inc.* v. *Newton,* 258 Mass. 326.

legislature ever intended that those organizations or institutions who [*sic*] have a legitimate charitable operation should be able to combine to form an alliance or syndicate through a holding company and compete with commercial industry. . . . By analysis, what would prevent this same group of allied hospitals from taking title to a large chemical plant and manufacturing drugs for their use; or a bakery, or a machine tool company to produce surgical instruments, or a plant for manufacturing surgical dressings or x-ray machines, etcetera." In reply to this, it should be emphasized that, rightly analyzed, there is no competition with commercial industry. Furthermore, there has been no finding that the manufacture of drugs, machine tools, surgical dressings, or X-ray machines is "an incidental part of an overall hospital operation." We do not intimate that no arrangement might be possible to keep the exemption and permit any one or more of the hypothetical activities in the tax board's interrogation. On the other hand, we are sure that the Legislature never intended to impose restrictive limitations upon the efforts of these charitable organizations to perform their service to the public in as efficient a manner as possible or to force up the already high costs to hospital patients.

Concededly, the laundry plant of each hospital before the foundation of the alliance was an integral part of the hospital, and the real and personal property owned by each, even if devoted to the purposes of a laundry, was exempt from taxation. Under the conclusions of the tax board and the supporting contentions of the assessors, the simple fact that the five hospitals for sound business reasons and purposes of economy have combined their laundries in a single physical unit in the name of a new corporation, formed to effectuate their purposes, has destroyed the individual exemption of each.

The final statement of the tax board's decision is: "We are therefore of the opinion that the character of those participating in the benefits of the laundry facilities involved in these appeals is not of great materiality in re-

solving the question of exemption." This charge is inaccurate. This ruling, or finding, whichever it is, is at variance with the implication of the following decisions, among others: *Assessors of Boston* v. *Boston Pilots' Relief Soc.* 311 Mass. 232, 237. *American Inst. for Economic Research* v. *Assessors of Great Barrington,* 324 Mass. 509, 513–514. *New England Trust Co.* v. *Commissioner of Corps. & Taxn.* 327 Mass. 113. *M.I.T. Student House, Inc.* v. *Assessors of Boston,* 350 Mass. 539. No pertinent authority is cited by the tax board.

The assessors' brief contains the comment that Association "more closely resembles a mutual benefit society than a charitable organization." See *Minns* v. *Billings,* 183 Mass. 126, 128. The undoubted facts are, however, that all the hospitals in the alliance and Association are charitable corporations, and that the ultimate class of beneficiaries is the general public.

The assessors rely on several statements usually found in cases denying an exemption. An exemption is a matter of special favor or grace and to be recognized only where the property falls clearly and unmistakably within the express words of a legislative command. *Boston Chamber of Commerce* v. *Assessors of Boston,* 315 Mass. 712, 716. We are of opinion that that condition is satisfied. They also rely upon the statement that the burden is on the taxpayer to show that it is entitled to the exemption claimed. *Old Colony Trust Co.* v. *Commissioner of Corps. & Taxn.* 331 Mass. 329, 345. *State Tax Commn.* v. *Blinder,* 336 Mass. 698, 703. In the present appeals that burden is fully discharged by basic facts and by necessary inferences from certain findings of the tax board. It is true that taxation is the general rule, and exemptions are to be strictly construed. *Animal Rescue League of Boston* v. *Assessors of Bourne,* 310 Mass. 330, 332, and cases cited. But the enhancement of tax receipts is not of itself sound reason to deprive these appellant taxpayers of their exemption.

One argument in the assessors' brief which does not carry conviction is that Association "merely does laundry work

which in and of itself does not bring the minds or hearts of an indefinite number of persons under the influence of education or religion or relieve their bodies from disease, suffering or constraint, or assist them to establish themselves in life.'' Laundry service is, as we have stated, an integral part of hospital operation. A policy to provide this service efficiently and at low cost does help to relieve the bodies of patients from disease, suffering, or constraint. The number of people so benefited *is* indefinite, notwithstanding the assessors' contrary protest. Such patients might include anybody and will include those admitted from public agencies for whom some payment is made. This purpose is ''for the benefit of 'the public at large or some part thereof, or an indefinite class of persons.' *Old South Society in Boston* v. *Crocker,* 119 Mass. 1, 23.'' *Assessors of Boston* v. *Garland Sch. of Home Making,* 296 Mass. 378, 387. See *Little* v. *Newburyport,* 210 Mass. 414, 417–418; *Newton Centre Woman's Club, Inc.* v. *Newton,* 258 Mass. 326, 330. Compare *Massachusetts Medical Soc.* v. *Assessors of Boston,* 340 Mass. 327, 332.

We are of opinion that Association is a public charity where the dominant purpose for which it was incorporated is to conduct an important hospital function by a coöperative effort of the charitable organizations named or authorized in its charter. Although, as the assessors' brief points out, no decision of this court has previously dealt with a corporation such as Association, our view finds support in analogous cases. See *Assessors of Boston* v. *Lamson,* 316 Mass. 166, 168–169, 173–174; *Assessors of Boston* v. *Vincent Club,* 351 Mass. 10, 13. See also *Harry Alan Gregg, Jr. Family Foundation, Inc.* v. *Commissioner of Corps. & Taxn.* 330 Mass. 538, 542–544.

The decision of the Appellate Tax Board is reversed, and the abatements of the taxes for 1961, 1962, and 1963 are to be granted with interest and costs, including costs of appeal.

*So ordered.*