404          453 Mass. 404 (2009)

CFM Buckley/North, LLC *v.* Board of Assessors of Greenfield.

CFM Buckley/North, LLC *vs.* Board of
Assessors of Greenfield.
John Adams Nursing Home, LLC *vs.* Board of
Assessors of Quincy.
Longmeadow of Taunton, LLC *vs.* Board of
Assessors of Taunton.

Suffolk. December 4, 2008. - March 16, 2009.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Taxation,* Real estate tax: abatement, exemption, charity. *Charity. Statute,* Construction. *Words,* "Limited liability company."

The Appellate Tax Board did not err in denying tax exemptions and abatements for the taxpayers, limited liability companies that operated nursing home facilities, where an entity organized as a limited liability company could not qualify as a "charitable organization" for purposes of the charitable exemption under G. L. c. 59, § 5, Third [406-410], and where the taxpayers' real property could not qualify for a tax exemption at any rate, as it was not occupied by the taxpayers in the manner required by the statute [410-412].

Appeals from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred the cases from the Appeals Court.

*Daniel E. Will* for the taxpayers.

*Rosemary Crowley* for Board of Assessors of Greenfield & another.

*Janet S. Petkun,* Assistant City Solicitor, for Board of Assessors of Quincy, was present but did not argue.

Marshall, C.J. These three appeals from a decision of the Appellate Tax Board (board) denying tax exemptions and abatements of taxes require that we consider whether a limited liability company (LLC) may qualify as a "charitable organization" for purposes of G. L. c. 59, § 5, Third.[1] The taxpayers each

---

[1]General Laws c. 59, § 5, Third, provides in relevant part:

"The following property shall be exempt from taxation . . .

"Third, Personal property of a charitable organization, which term,

operate a nursing home facility, and each claims exemptions from taxes assessed on both realty and personalty for one or more fiscal years. In each case, the municipality refused the taxpayer's application or applications for exemption and tax abatement, and the taxpayers filed separate petitions challenging those decisions under the board's formal procedure. G. L. c. 58A, § 7. The board allowed the municipalities' motions for judgment on the pleadings[2] and, because the "relevant facts necessary for resolution of this issue are essentially identical and are not in dispute," issued a single report and findings of fact. See G. L. c. 58A, § 13. The taxpayers appealed, and we transferred each of the cases here on our own motion. We conclude that an entity organized as a LLC does not come within the definition of a "charitable organization," for purposes of G. L. c. 59, § 5, Third, and that a "charitable organization" must occupy real property for the property to be considered for a tax exemption.

1. *Background.* The board's factual findings are not disputed on appeal and, in any event, are treated as final so long as the "evidence is sufficient to support the board's findings." *Olympia*

as used in this clause, shall mean (1) a . . . charitable or scientific institution . . . incorporated in the commonwealth . . . and real estate owned by or held in trust for a charitable organization and occupied by it or its officers for the purposes for which it is organized or by another charitable organization or organizations or its or their officers for the purposes of such other charitable organization or organizations . . . provided, however, that:

"(*a*) If any of the income or profits of the business of the charitable organization is divided among the stockholders, the trustees or the members, or is used or appropriated for other than literary, benevolent, charitable, scientific or temperance purposes or if upon dissolution of such organization a distribution of the profits, income or assets may be made to any stockholder, trustee or member, its property shall not be exempt; and

"(*b*) A corporation coming within the foregoing description of a charitable organization or trust established by a declaration of trust . . . and coming within said description of a charitable organization shall not be exempt for any year in which it omits to bring in to the assessors the list . . . required by section twenty-nine and a true copy of the report for such year required by section eight F of chapter twelve to be filed with the division of public charities . . . ."

[2]The board of assessors of Greenfield filed a motion to dismiss, which the board treated as a motion for judgment on the pleadings.

& *York State St. Co.* v. *Assessors of Boston,* 428 Mass. 236, 240 (1998). Each of the taxpayers, CFM Buckley/North, LLC; Longmeadow of Taunton, LLC; and John Adams Nursing Home, LLC, operates a facility that provides skilled nursing home care exclusively to indigent elderly and infirm patients on a nonprofit basis. They each are organized as a limited liability company (LLC) under the laws of Delaware, and each has as its sole member ElderTrust of Florida, Inc. (ElderTrust). ElderTrust is a corporation organized under the laws of Tennessee, having as its stated purpose the ownership and operation of elder care facilities, including nursing homes. There is no dispute that ElderTrust is organized for charitable purposes, or that it qualifies for Federal tax exemption, pursuant to 26 U.S.C. § 501(c)(3) (2006). The board found that there were no "impermissible financial benefits flowing to investors."

The certificates of formation for the LLCs, see 6 Del. Code § 18-101 (2005 & Supp. 2008), provide that the entity "shall serve only such purposes and functions and shall engage only in such activities as are consistent with . . . the charitable purposes and objectives of its sole member." Similarly, the entities' operating agreements provide that ElderTrust "shall have full and complete authority, power, and discretion to manage and control the business affairs, and properties of [the LLCs], to make all decisions regarding those matters and to perform any and all acts or activities customary to the management of [the LLCs'] business."

2. *Discussion.* We begin with the premise that "[a]ll property, real and personal, situated within the commonwealth [shall be subject to taxation] . . . unless expressly exempt." G. L. c. 59, § 2. The board concluded that neither the real nor the personal property of the taxpayers qualified for a G. L. c. 59, § 5, Third, charitable exemption because the taxpayers were not incorporated but were, instead, organized as limited liability companies. It also concluded the taxpayers could not claim exemption based on holding the property "in trust" for a qualifying charitable organization. We attach "some significance to the fact that the Board [is the] State agency charged with administration" of the tax abatement process of the law, and "that we deal here with a clause which exempts from tax and thus is to be construed without particular generosity toward taxpayers." *Henry Perkins Co.* v.

*Assessors of Bridgewater,* 377 Mass. 117, 121-122 (1979). See *McCarthy* v. *Commissioner of Revenue,* 391 Mass. 630, 632 (1984). We agree with the board.

a. *Organizational form.* General Laws c. 59, § 5, Third, accords exemption from taxation to a "charitable organization," defined by statute as "(1) a literary, benevolent, charitable or scientific institution or temperance society *incorporated* in the commonwealth, and (2) a trust for literary, benevolent, charitable, scientific or temperance purposes"[3] (emphasis added). As this court noted more than seventy years ago: "It is a familiar principle that no exemption from taxation can be allowed except upon its being fairly shown that it was intended by the terms of the statute. It is impossible to extend by construction the operation of such exemption beyond the plain words of the statute." *William T. Stead Memorial Ctr. of N.Y.* v. *Wareham,* 299 Mass. 235, 239 (1938). The language plainly limits tax-exempt status to those "charitable organizations" that are incorporated. See, e.g., *Brennan* v. *Election Comm'rs of Boston,* 310 Mass. 784, 789 (1942) (court will "construe the statutes as they are written").

A limited liability company is not a corporation. Indeed, G. L. c. 156C, § 2 (5), specifically defines a LLC as "an unincorporated organization formed under [G. L. c. 156C] and having 1 or more members." For purposes of G. L. c. 59, § 5, Third, a LLC lacks the legal form necessary to qualify for tax exemption. See *RCN-BecoCom, LLC* v. *Commissioner of Revenue,* 443 Mass. 198, 206-207 (2005) (*RCN*). In *RCN,* we considered whether a LLC was entitled to a property tax exemption under G. L. c. 59, § 5, Sixteenth, which applies to "corporations" and banks. We concluded that "[t]he Board determined, and we agree, that § 5, Sixteenth, is not ambiguous. By its plain language, it applies to corporations, not limited liability

---

[3]In *Mary C. Wheeler Sch., Inc.* v. *Assessors of Seekonk,* 368 Mass. 344 (1975), we concluded that limiting the G. L. c. 59, § 5, Third, exemption to domestic corporations violated the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. See *Davis* v. *Commissioner of Revenue,* 390 Mass. 1006 (1984). Accordingly, that neither the taxpayers nor their sole member were organized in Massachusetts is not relevant to our analysis. In addition, there is no contention that the taxpayers were declared trusts, and therefore, we do not discuss that provision of the statute.

companies." *Id.* at 207. While *RCN* involved a telecommunications services provider, and the taxpayers here contend that different considerations should apply to nonprofit corporations, "[a] word used in one part of a statute in a definite sense should be given the same meaning elsewhere in the statute, barring some plain contrary indication." *Connolly* v. *Division of Pub. Employee Retirement Admin.*, 415 Mass. 800, 802-803 (1993). We conclude that the taxpayers failed to demonstrate "clearly and unequivocally that [they] come[] within the terms of the exemption." *Western Mass. Lifecare Corp.* v. *Assessors of Springfield*, 434 Mass. 96, 102 (2001), quoting *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston*, 294 Mass. 248, 257 (1936) ("Any doubt must operate against the one claiming tax exemption . . ."). See *Harvard Community Health Plan, Inc.* v. *Assessors of Cambridge*, 384 Mass. 536, 543 (1981) ("party claiming exemption bears a grave burden of proving the claim").

We acknowledge the taxpayers' suggestion that the "functional test" used to evaluate whether a particular organization is entitled to a charitable exemption under G. L. c. 59, § 5, Third, requires that the substance of the charitable activity, rather than the form of organization, should determine application of the exemption. See *H-C Health Servs., Inc.* v. *Assessors of S. Hadley*, 42 Mass. App. Ct. 596 (1997). The functional test, however, cannot be used to supplant the express statutory requirement of incorporation. In the *H-C Health Servs.* case, for example, a taxpayer was granted an exemption under § 5, Third, notwithstanding that it was organized as a business corporation pursuant to G. L. c. 156B, rather than a nonprofit corporation pursuant to G. L. c. 180. As the Appeals Court noted, the clause does not require that a taxpayer be incorporated under a specific chapter. *Id.* at 598-599. The statute does, however, require that the taxpayer be incorporated.

Similarly, in *Brown, Rudnick, Freed & Gesmer* v. *Assessors of Boston*, 389 Mass. 298, 302 (1983), this court noted that "bare statutory compliance" does not necessarily warrant a tax benefit, and that, when "a corporation has claimed an exemption as a charitable institution under G. L. c. 59, § 5, Third, we have refused to allow form to control. Instead, we have looked to the declared purposes of and the actual work performed by

the corporation to determine whether it was in fact operated for charitable purposes." *Id.* at 303. Our cases teach that, while "bare compliance" with statutory requirements is minimally necessary, the nature of the activities performed by the organization also is relevant. *Id.* See *Fisher Sch.* v. *Assessors of Boston*, 325 Mass. 529, 533 (1950), quoting *Jacob's Pillow Dance Festival, Inc.* v. *Assessors of Becket*, 320 Mass. 311, 313 (1946) ("[T]o obtain an exemption it is not enough for a corporation to show merely that the purposes for which it was incorporated were charitable. It must also 'prove that it is in fact so conducted that in actual operation it is a public charity' "). As the board noted in these cases, while the nature of the functions performed by an organization is a factor in determining whether a tax exemption is available, it is not the only relevant consideration; "[i]f it were, real estate owned and occupied by partnerships or individuals for charitable purposes would be exempt from local taxation, a result clearly not contemplated by the statute." See *Kirby* v. *Assessors of Medford*, 350 Mass. 386, 390-391 (1966) (where statute provided exemption from property taxes for certain elderly property owners, exemption did not apply to trust that held property for benefit of elderly resident).

There is no dispute that these taxpayers have certain charitable characteristics — they each operate a nursing home facility providing skilled nursing home care exclusively to indigent elderly and infirm patients covered by Medicaid and Medicare on a nonprofit basis. Nonetheless, the statute plainly requires that an organization be incorporated, and "[w]e cannot interpret a statute so as to avoid injustice or hardship if its language is clear and unambiguous and requires a different construction." *Pielech* v. *Massasoit Greyhound, Inc.*, 423 Mass. 534, 539 (1996), cert. denied, 520 U.S. 1131 (1997), quoting *Rosenbloom* v. *Kokofsky*, 373 Mass. 778, 780-781 (1977). See *Kirby* v. *Assessors of Medford*, *supra*. Where the taxpayers opted not to incorporate, and are entitled to whatever advantages may flow from the business form they selected, they are not entitled to benefits as a corporation. That their choice may have tax consequences does not require a different result. See *RCN-BecoCom, LLC* v. *Commissioner of Revenue*, 443 Mass. 198, 207 (2005) (taxpayer's "voluntary election to do business in Massachusetts

as a limited liability company, rendering itself ineligible for the corporate exemption").

b. *Taxpayers as trustees.* While the taxpayers do not qualify as "charitable organizations" for purposes of G. L. c. 59, § 5, Third, because they are not incorporated, they suggest that the real property[4] at issue nonetheless is exempt from taxation because it is "real estate owned by or held in trust for a charitable organization *and* occupied by it or its officers for the purposes for which it is organized"[5] (emphasis added). G. L. c. 59, § 5, Third. The taxpayers contend that they hold the nursing home facilities "in trust" for a qualifying "charitable organization," namely their sole member, ElderTrust of Florida, Inc.[6] Like the board, we reject that contention.

A tax exemption "is a matter of special favor or grace," available "only where the property falls clearly and unmistakably within the express words of a legislative command." *Massachusetts Med. Soc'y* v. *Assessors of Boston*, 340 Mass. 327, 331 (1960), quoting *Boston Chamber of Commerce* v. *Assessors of Boston*, 315 Mass. 712, 716 (1944). The "express words" of G. L. c. 59, § 5, Third, require both that the real estate be "owned by or held in trust for a charitable organization" as well as that it be "occupied by *it* or its officers" (emphasis added). While the taxpayers argue that the statute neither requires evidence of any particular type of trust relationship nor specifies the elements necessary to satisfy the "in trust" requirement, they overlook the threshold requirement that property be "occupied" by a qualifying charitable organization. Regardless whether the "dominant purpose" for the taxpayers' ownership and occupation of the properties is to serve as a "trustee" for a qualifying charitable organization, ElderTrust itself neither owns nor occupies the real property, as the statute requires. See *Children's Hosp. Med. Ctr.* v. *Assessors of Boston*, 353 Mass. 35 (1967).

---

[4]The statute contains no similar provision for personal property.

[5]The board likewise noted that "[t]he charitable organization that owns the real estate, or another charitable organization, must also occupy the real estate in furtherance of the charitable purposes of the owner or occupant. This requirement [of charitable purposes] is not at issue in these appeals."

[6]Organized under Tennessee law, ElderTrust is a nonprofit corporation, exempt from taxation under § 501(a) of the Internal Revenue Code. Nothing in the record suggests that ElderTrust submitted annual filings identified in G. L. c. 59, § 5, Third (*b*).

In the *Children's Hosp. Med. Ctr.* case, the hospital, a charitable corporation, briefly owned and occupied a parcel of land while it was being developed for use as a hospital laundry. *Id.* at 37. Thereafter, title to the property was transferred to the Hospitals Laundry Association, Inc., organized by five area hospitals and a university dispensary. *Id.* at 37-38. In concluding that the real property was exempt from taxation, we found that "laundry work . . . is an indispensable feature of hospital operation," and that such work was part of the hospital's charitable purpose. *Id.* at 40, 41. It was not material, in that case, whether the hospital owned and occupied the property as a laundry for itself, or whether it held the property as a trustee for the association: either way, the hospital owned and occupied the property in connection with its charitable purpose, and held the property in anticipation of the association's taking ownership and occupation of it.

In contrast, while the LLCs have a single member, they are legally distinct entities, and occupation by the taxpayer does not equate to occupation by ElderTrust.[7] The taxpayers failed to establish that the property is "held in trust of a charitable organization and occupied by it" for charitable purposes.[8] G. L. c. 59, § 5, Third.

---

[7] The taxpayers' operating agreements provide that each will "at all times abide by the separateness covenants" established, including that each will conduct business in its own name, observe organizational formalities, hold itself out as a separate entity, and "correct any known misunderstanding regarding its separate identity."

[8] We reject the taxpayers' suggestion that the clause's "occupied" requirement does not apply to properties "held in trust." The language of the statute does not support that construction: it requires that property be occupied by a "charitable organization" to qualify for a tax exemption. See *Milton* v. *Ladd*, 348 Mass. 762, 764-765 (1965) ("exemption is given to land occupied and used by a charity for its charitable purposes, even though the land is 'held in trust . . . or by another charitable organization.' Thus the statute focuses on the occupation and use rather than the record title as determinative of whether particular real estate should be exempt"). The cases cited by the taxpayers involve whether the property owner satisfied the occupancy requirement, not whether the "occupied" requirement applies to trusts or trustees. In *M.I.T. Student House, Inc.* v. *Assessors of Boston*, 350 Mass. 539, 542 (1966), for example, the corporate owner was considered to "occupy" a residence it maintained for needy students because the students' presence was consistent with the charitable purpose of the organization. In these cases, the occupation of the nursing home facilities was by the limited liability taxpayers and not by

We similarly reject the taxpayers' suggestion that, because the Legislature last revised G. L. c. 59, § 5, Third, as amended through St. 1985, c. 489, some ten years before limited liability companies were authorized in the Commonwealth, pursuant to G. L. c. 156C, inserted by St. 1995, c. 281, § 18, the Legislature did not intend to exclude such companies from the exemption. We presume the Legislature was aware of various organizational forms and taxing mechanisms when it enacted G. L. c. 156C. *Condon* v. *Haitsma*, 325 Mass. 371, 373 (1950) ("Legislature must be presumed to have meant what the words plainly say, and it also must be presumed that the Legislature knew preexisting law and the decisions of this court"). Thus, for example, partnerships, which share some tax attributes with LLCs, long have been recognized in Massachusetts, and there is no suggestion that this exemption applies to them. *Nashoba Communications Ltd. Partnership* v. *Assessors of Danvers*, 429 Mass. 126, 129 (1999) ("both the Federal and Massachusetts taxing schemes treat corporations and partnerships differently"; "if any inequality exists in this treatment, it can be avoided because it is the taxpayer's option to operate as a partnership or to do business as a corporation"). See *State Tax Comm'n* v. *Fine*, 356 Mass. 51, 56 n.8 (1969) ("trusts with transferable shares are not corporations and cannot be treated as such for some tax purposes").

> *Decision of the Appellate Tax Board affirmed.*

---

the Tennessee corporation that was their "member." The certificates of formation of the LLCs required that the LLCs hold themselves out as separate entities, and conduct business in their own names.