**FOUNDATION FOR HUMANITY, INC. AND NATURE PRESERVE, INC.**

v.

**BOARD OF ASSESSORS OF THE TOWN OF PEMBROKE**

Nos. 113522, 113523

Appellate Tax Board
Trial Court of the
Commonwealth of Massachusetts

March 29, 1982

**Daniel P. Byrnes, Esq.**, counsel for the appellant.

**Joseph F. Dalton, Esq.**, counsel for the defendant.

These are two appeals under the formal procedure pursuant to G.L.c. 59, §§ 64 and 65 from the refusal of the appellee to abate taxes for fiscal year 1980 assessed on real estate of the appellants, which they contend is exempt from taxation under G.L.c. 59, § 5, Clause Third.

These findings of fact and report are made pursuant to a request by the appellant, Nature Preserve, Inc., and on the board's own motion in the appeal of Foundation for Humanity, Inc., pursuant to G.L.c. 58A, § 13, as amended.

## FINDINGS OF FACT AND REPORT

The appellants are two corporations organized under G.L.c. 180 of the Massachusetts General Laws. On January 1, 1979 they were the assessed owners of contiguous parcels of real estate at 172 Washington Street (Route 53), Pembroke, Mass.

The appellee valued the real estate of the appellant Foundation for Humanity, Inc. (Foundation), consisting of 6.97 acres of land with the buildings thereon, at $86,220.00 and assessed a tax thereon at a rate of $32.85 per thousand in the total amount of $2,832.32. The appellee valued the real estate of Nature Preserve, Inc. (Nature), consisting of about 48 acres, at $96,500 and assessed a tax thereon at the rate of $32.85 per thousand in the amount of $3,173.66. The appellants paid the first half of the taxes of February 21, 1980, within thirty days of the sending of the tax bills, and the second half of the taxes on April 25, 1980. The appellants filed with the appellee, on proper forms, applications for statutory exemption under G.L.c. 59, § 5, Clause Third on February 14, 1980. The appellee failed to act on said applications prior to three months from the date of filing and they were deemed denied by operation of law on May 14, 1980. Timely appeals were filed with this board on July 17, 1980. The appellants also filed with the appellee "3 ABC" forms pursuant to G.L.c. 59, § 29 on March 12, 1979 for fiscal year 1980*. Appellants did not attach to the said 3 ABC forms a copy of the most recent report required by G.L.c. 12, § 8F to be filed with the Division of Public Charities in the Department of the Attorney General because the report form was not available from that office at the time of these hearings**. The board finds that it has jurisdiction to hear these appeals.

Richard A. Iacobucci purchased the subject property, which includes both parcels, in his own name on November 1, 1978 for $150,000. The property consisted of 52 acres of land with eight buildings thereon including a three-story

---

\* Chapter 560 of the Acts of 1980 provides that "3 ABC" forms may be filed for fiscal year 1980 on or before November 1, 1980. (The appellant had also filed "3 ABC" forms on February 14, 1980 for fiscal year 1981 but no claim is made that any part of the real estate of Foundation was exempt from taxation under said Clause Third for fiscal year 1981. According to Foundation's attorney, there was more space rented out in fiscal year 1981 and it was profit making.

\*\* G.L.c. 12, § 8F, as amended by St. 716 of 1979, provides that the Director of Public Charities shall determine when said reports are due.

30-room mansion built around 1712, three small bungalows and four utility buildings for storage. He paid for the property from the proceeds of a $75,000 mortgage on the property running from him to Rockland Savings Bank, dated November 1, 1978, and loans from his parents, Anthony and Frances Iacobucci, relatives and friends.

Mr. Iacobucci is the founder and director of the two Chapter 180 corporations, Nature and Foundation. On December 28, 1978 he conveyed 45 acres of the original 52 acres that he bought to Nature for $100,000, and on the same date conveyed the remaining 7 acres with the buildings thereon to Foundation for $50,000. Both conveyances were subject to the $75,000 mortgage to Rockland Savings Bank. Mr. Iacobucci did not receive any money from these transfers. Also on December 28, 1978 Foundation further encumbered the properties by executing a $50,000 mortgage to Mr. Iacobucci and Nature gave a $25,000 mortgage to Anthony and Frances Iacobucci. This $25,000 mortgage was discharged on February 22, 1980 and a $50,000 mortgage put on in its place. On February 22, 1980 Foundation gave a mortgage for an unstated amount to Anthony Iacobucci for services rendered to Foundation.

Richard A. Iacobucci lives on the Foundation property at 172 Washington Street in the 30-room mansion. He is a lighting designer by profession and the sole director and stockholder of Roctronics, Inc., a firm that designs strobe and entertainment lighting. On March 20, 1979, Mr. Iacobucci obtained a variance to operate his lighting design business from 172 Washington Street. Roctronics, Inc. has six employees including Mr. Iacobucci and occupies about half of the thirty-room mansion. Roctronics, Inc. pays Foundation $1,000 a month rental. Foundation is not claiming any exemption for the real estate rented to Roctronics, Inc.

Foundation also rents out two small bungalows on the property for $200 a month each. One of the tenants is under the Section 8 rental assistance program. Foundation does not claim any exemption for this rented property.

Foundation does claim a charitable exemption under said Clause Third, however, for the remainder of the Foundation property. This includes the rest of the 30-room mansion not occupied by Roctronics, Inc., and which allegedly has been set aside for use by community organizations for meetings, etc., Mr. Iacobucci's living quarters, its utility buildings that house tractors and machinery to cut and maintain Foundation's and Nature's lawns, and the bungalow occupied by Anthony and Frances Iacobucci, who act as caretakers and custodians.

Foundation's predecessor was Yack Foundation, Inc., a charitable corporation founded by Mr. Iacobucci and located in Braintree, Mass. Yack Foundation, Inc. performed mostly research projects. In 1976 Yack Foundation, Inc. changed its name to Foundation for Humanity, Inc., and on January 19, 1979, after the assessment date pertinent hereto, its purposes were amended to its present form. Foundation's purposes, as set forth in its Articles of Organization, are generally charitable in nature. Its declared purposes, as set forth by Mr. Iacobucci, are to set aside certain rooms in the thirty-room mansion for use by community groups for meetings, lectures, etc.

When Mr. Iacobucci acquired the subject property on November 1, 1978 the buildings were in a "sorry shape". Only one of the seven bathrooms in the main house worked. The paint was peeling from the walls and the tiles on the floor buckled. The walls were cracked and dirty. There were insufficient light fixtures. Mr. Iacobucci spent the next eighteen months following the purchase repairing the buildings.

On November 1, 1979, Mr. Iacobucci gave the local board of assessors a tour of the property explaining how it would be used by Foundation and Nature; renovations were going on and the rooms to be used by community groups were sparsely

furnished with some chairs and a desk, typewriter, postage meter, duplicating machine, etc. The main house was formerly used as a nursing home and the kitchen had potential for use by community groups. There was no evidence that any such group had used the property in 1979 or the first half of 1980. The property was in such a state of disrepair that it is doubtful if it could be used by any such group to any significant extent. Insofar as it is a question of fact, the board finds that the Foundation property was not used for charitable purposes within the meaning of said Clause Third on January 1, 1979 or for fiscal year 1980.

Foundation operates at a deficit. Its only income is from the rentals and Mr. Iacobucci makes up the difference by loans. The rental income is used to pay the mortgage, taxes and maintenance. Mr. Iacobucci does not receive any salary and he does not pay any rent for his living quarters on the property.

Nature was founded by Mr. Iacobucci on December 22, 1978 and he is the sole director. Its purposes, as set forth in its Articles of Organization, are generally charitable. They include protection of open space and wildlife and watersheds from pollution, promotion of outdoor recreation and mental and physical health. Its declared purposes, as set forth on its membership agreement form, are to maintain the land and wildlife and vegetation in its present state of natural beauty. Members of Nature are expected to sign an agreement to abide by certain rules such as not to leave waste behind, not to start fires, not to use motor vehicles on the property, etc. They are also expected to give a $5.00 donation, but this is not compulsory. About $65.00 was raised from such dues and there were 41 members at the time of these hearings. This is the only source of income and the deficit is made up by Mr. Iacobucci.

The 48 acres that comprise the Nature property are made up of high and low meadows, forest area, marsh area, a pond and a dry sandy area. A biologist testified that it was conducive to wild life. The dry sandy area is due to the former owner removing the top soil and taking fill out. A member of Nature, in the landscaping business, dropped off about 30 loads of wood chips to try to reclaim this area. There was also evidence that some neighbors who were Nature members helped Mr. Iacobucci install some drain pipes to prevent silt going into the pond and removed some brush from the trails. No trespassing signs were posted on the property designating it as a nature preserve and listing a number to call. There was also evidence that some neighbors who were members walked and jogged on the property with their families. There was also some evidence that a horseback riding school and a high school cross-country team had used the property. The board finds that while some reclamation work had been done on the property and some people used the property, its dominant purpose was to benefit Mr. Iacobucci and his parents and a handful of members.

On all of the evidence, the testimony, exhibits and on the basis of the above general and subsidiary findings and reasons and principles set forth below, the board finds that the appellants were not entitled to an exemption of their rental estate from taxes under the provisions of G.L.c. 59, § 5, Clause Third.

## OPINION

The issue is whether the real estate of Nature Preserve, Inc. (Nature) and such part of the real estate of Foundation for Humanity, Inc. (Foundation) allegedly set aside for charitable purposes is exempt from taxation under G.L.c. 59, § 5, Clause Third for fiscal year 1980.

G.L.c. 59, § 5, Clause Third exempts from taxation property of a charitable organization defined as a literary, benevolent, charitable or scientific institution incorporated in the commonwealth. The real estate must be owned by a charitable organization and occupied by it or its officers for the purposes for which it is organized or by another charitable organization or organizations or its officers for the purposes of such other charitable organization or organizations. If any of the in-

come or profits of the business of the charitable organization is divided among the stockholders or the members or is used or appropriated for other than literary, benevolent, charitable, scientific or temperance purposes or if upon dissolution of such organization a distribution of the profits, income or assets may be made to any stockholder or member, its property shall not be exempt.

The mere fact that a corporation was founded under the provisions of Chapter 180 does not by itself establish that it is a charitable corporation. To determine whether the corporation is charitable, we must consider the language in its Articles of Organization, the purposes declared and the actual work done. See, **Matter of Troy**, 364 Mass. 15, 57 (1973).

The occupancy of real estate for charitable purposes is something more than that which results from simple ownership and possession and signifies an act of appropriation to the immediate uses of a charitable cause for which the owner was organized, and the nature of occupancy must be such as to contribute immediately to promotion of the charity and physically to participate in the forwarding of its beneficial objects. See, **Assessors of Boston v. Vincent Club**, 351 Mass. 10, 14 (1966).

When we look at Foundation's use, we find that part of the subject property was allegedly set aside for the use of local organizations. Assuming that these organizations are charitable and they would use the property for charitable purposes, there was no evidence that it was actually used for such purposes on January 1, 1979 or for fiscal year 1980.

When we examine Nature's use of the property, assuming without deciding that maintaining the land and its wildlife and vegetation in its present state of natural beauty is a charitable purpose, we find that only a handful of people actually entered upon said parcel. The persons who are to benefit from its charitable purpose must be of a sufficiently large or indefinite class so that the community is benefited by its operations. See, **Harvard Community Health Plan, Inc. v. Assessors of Cambridge**, 1981 Mass. Adv. Sh. 2143, 2150.

The test has been stated as follows: An institution will be classed as charitable if the dominant purpose of its work is for the public good and the work done for the members is but the means adopted for this purpose. But if the dominant purpose of its work is to benefit its members or a limited class of persons, it will not be so classed, even though the public will derive an incidental benefit from such work. See, **Harvard Community Health Plan, Inc. v. Assessors of Cambridge**, supra, 2151.

In these appeals, Mr. Iacobucci had complete control of Foundation and Nature's affairs and finances as well as those of Roctronics, Inc. All of these corporations were located on the subject property and closely connected. Mr. Iacobucci could terminate their corporate existence at will. All of the corporate assets were pledged to payment of indebtedness to Mr. Iacobucci and his parents, except for the bank mortgage and the total outstanding mortgages far exceeded the purchase price of the property. No charitable benefits could be conferred on the public without Mr. Iacobucci's approval. It is doubtful whether the Chapter 180 corporations were being conducted primarily for promotion of the general public good or for the primary benefit and profits of Mr. Iacobucci and his parents and a handful of members. See, **Boston School of Dental Nursing v. Assessors of Boston**, (1942), Mass. ATB 15.

It is a well-established rule that a party claiming a charitable exemption bears a grave burden of proving his claim. **Harvard Community Health Plan, Inc. v. Assessors of Cambridge**, supra, 2151. "Exemption from taxation is a matter of special favor or grace. It will be recognized only where the property falls clearly and unmistakably within the expressed words of a legislative command." **Boston Chamber of Commerce v. Assessors of Boston**, 315 Mass. 712, 716. "Any doubt must operate against the one claiming tax

exemption because the burden of proof is upon the one claiming exemption from taxation to show clearly and unequivocably that it comes within the terms of the exemption." **Boston Symphony Orchestra, Inc. v. Assessors of Boston**, 294 Mass. 248, 257. '...statutes granting exemption from taxation are strictly construed." **Animal Rescue League of Boston v. Assessors of Bourne**, 310 Mass. 330, 332. The appellants in these appeals have not sustained their burden of proof.

Our decisions for the appellee were promulgated March 27, 1981.

APPELLATE TAX BOARD
By **John P. Mulvihill Chairman**
A True Copy
Attest: **Richard B. Willis**
**Clerk of the Board**